998 So.2d 494 (2008)
Gene Robert SIMS, Petitioner,
v.
STATE of Florida, Respondent.
No. SC05-400.
Supreme Court of Florida.
September 25, 2008.
Rehearing Denied December 22, 2008.
*496 Christopher M. Jones and Kristen Cooley Lentz, Gainesville, Florida, for Petitioner.
Bill McCollum, Attorney General, Tallahassee, Florida, and Wesley Harold Heidt and Kellie A. Nielan, Assistant Attorneys General, Daytona Beach, Florida, for Respondent.
LEWIS, J.
We have for review Sims v. State, 869 So.2d 45 (Fla. 5th DCA 2004), which expressly and directly conflicts with the decisions in Geary v. State, 675 So.2d 625 (Fla. 2d DCA 1996), Rodriguez v. State, 684 So.2d 864 (Fla. 2d DCA 1996), and May v. State, 747 So.2d 459 (Fla. 4th DCA 1999). We have jurisdiction pursuant to article V, section 3(b)(3) of the Florida Constitution. We quash the decision under review for the reasons set forth in our analysis below.

I. FACTUAL AND PROCEDURAL HISTORY
The facts of the underlying action, which were summarized in the opinion of the Fifth District Court of Appeal, are as follows:
Mr. Sims was driving his wife's truck when he struck and killed Bernell Williams (the "Victim"). For reasons not specified[,] Mr. Sims left the scene of the accident without ever stopping the truck. He was charged with violating section 316.027(1)(b), Florida Statutes (2001), and found guilty as charged in the information.
Sheila Asbury, one of the passengers in the Sims vehicle, testified that the occupants of the truck were looking for drugs, having already smoked crack cocaine and drunk beer prior to the accident. She stated that before Mr. Sims hit the Victim, she saw the Victim laying [sic] on top of a bicycle in the middle of the road. She described the sounds made by the accident as a "loud dragging like metal ... it was dragging bad." Because the Victim was laying [sic] in the middle of the road, Mr. Sims had only two choices. He could either hit the Victim or hit the guardrail on the side of the road. In any event, the trial court eventually determined that the accident was virtually unavoidable.
The medical examiner testified at trial that at the time of his death[,] the Victim had a blood alcohol level of .196, and that he had been struck while he was lying in the street. He theorized that the Victim had fallen off of his bicycle and was lying in the middle of the road when he was struck. The medical examiner further testified that the victim's death was "instantaneous" upon impact, or certainly "within a second or two." The autopsy revealed that the Victim had lacerations of the head, neck, and face; bruises and abrasions on the lower chest; skin rubbed off from large areas of his arms and from his lower back to the top of his shoulders; a torn scalp; crushing injuries to his entire chest and to the right side of his abdomen; a broken right pelvis; every rib fractured on both sides of his torso; a crushed and torn liver; a crushed and torn heart; extensive lung injuries; a broken back and neck; and a crushed skull with extensive injuries to the brain. The doctor concluded that the Victim's injuries were *497 consistent with his being hit, dragged, and run over.
A law enforcement homicide investigator who responded to the scene indicated that he saw the Victim on the side of the road, where he had been placed by two passers-by. When asked what he was able to determine from an examination of the accident scene, he said[,] "Basically all I could say for sure is that the gentleman had been hit by some type of vehicle and drug down the road for a bit and was dead."
Prior to sentencing[,] a pre-sentence investigation was prepared which reflected a minimum sentence of 8 months['] incarceration. At the sentencing hearing, however, the State argued in favor of adding 120 victim-injury points to Mr. Sims' Criminal Punishment Code scoresheet. The trial judge agreed, and but for a downward departure, the result was the lowest permissible prison sentence of eight years. Because the trial judge found, among other things, that the accident was "nearly unavoidable," he downwardly departed, and sentenced Mr. Sims to five years in the custody of the Department of Corrections, followed by five years of probation.
Sims, 869 So.2d at 46. Sims appealed his conviction to the Fifth District Court of Appeal.
The Fifth District affirmed, concluding that victim-injury points were properly imposed. See id. In reaching this holding, the Fifth District applied an abuse-of-discretion standard to review the trial court's imposition of victim-injury points. See id. at 47. Referencing the decision of the Fourth District in May,[1] the Fifth District concluded there was substantial evidence that the victim had been dragged by the vehicle of Sims after the initial impact and, therefore, a sufficient causal connection existed between the offense of leaving the scene of an accident resulting in death and the death of the victim. On this basis, the Fifth District upheld the imposition of victim-injury points. See Sims, 869 So.2d at 48. The district court's conclusion that victim-injury points were properly imposed here conflicts with the specific causation requirement recognized in May. Unlike May, there was no expert in the instant case to establish anything other than the initial impact being the sole and exclusive cause of death. Additionally, the Fifth District reasoned here that the decisions of the Second District in both Rodriguez and Geary[2] were distinguishable because no causal connection existed in those cases. See Sims, 869 So.2d at 48. Contrary to the Fifth District's reasoning, the imposition of victim-injury points in this case also conflicts with Rodriguez and Geary because the death of the victim was neither caused by, nor causally related to, Sims leaving the scene of the accident.
Sims sought review of the Fifth District's decision with regard to the imposition of victim-injury points. On March 1, 2005, Sims filed with this Court a pro se *498 petition to invoke all writs jurisdiction. We properly treated the petition as a notice to invoke discretionary jurisdiction. See Fla. R.App. P. 9.040(c) ("If a party seeks an improper remedy, the cause shall be treated as if the proper remedy had been sought...."). This Court dismissed the notice to invoke because it was not timely filed. See Fla. R.App. P. 9.120(b) ("The jurisdiction of the supreme court ... shall be invoked by filing ... notice ... within 30 days of rendition of the order to be reviewed."). Through a motion for reinstatement, Sims contended that his state-appointed attorney did not properly supply him with a copy of the decision below or keep him apprised of the case status, which precluded him from filing a timely pro se petition. Moreover, Sims maintained that he did not immediately request discretionary review because he erroneously believed that he needed the following items to do so: (1) a copy of the mandate resulting from the decision below; (2) the trial-court transcript; and (3) the record on appeal. As requested by this Court, the state-appointed attorneyi.e., appellate counsel during the direct appeal to the Fifth Districtprovided a response to the motion for reinstatement. On December 19, 2005, we granted Sims' motion for reinstatement. On May 10, 2006, this Court granted review of the Fifth District's decision. See Sims v. State, 926 So.2d 1270 (Fla.2006) (table).

II. ANALYSIS

A. Belated Notices to Invoke
As a preliminary matter, we properly granted the motion for reinstatement. Under the circumstances of the instant case, this Court had the ability to treat the notice to invoke as timely filed. This Court has previously treated belated notices to invoke as timely filed when late filing was due to some fault of the attorney and beyond the incarcerated defendant's control. See, e.g., Rios v. State, No. SC06-1144 (Fla. Nov. 7, 2006); Rodriguez v. State, No. SC05-1442 (Fla. Mar. 2, 2006); Parks v. State, No. SC05-978 (Fla. Feb. 17, 2006); Lyons v. State, No. SC03-249 (Fla. May 4, 2005); Saint-Fleur v. State, No. SC03-44 (Fla. Apr. 15, 2005); Jordan v. State, No. SC02-465 (Fla. Apr.13, 2005); Curtis v. State, No. SC01-2342 (Fla. Apr.12, 2005); Arrington v. State, No. SC02-669 (Fla. Jan. 6, 2004); Lorenz v. State, No. SC02-769 (Fla. Apr. 8, 2003). However, in prior orders granting motions for reinstatement, this Court has not articulated its reasoning. Here, the reasoning is simple.
We clearly had the discretion to treat Sims' notice to invoke as timely filed. Criminal defendants are entitled to a direct appeal as a matter of right in Florida. See Amendments to Fla. R. App. Pro., 685 So.2d 773, 774 (Fla.1996) (concluding that article V, section 4(b)(1) of the Florida Constitution, provides a constitutional protection of the right to appeal); § 924.05, Fla. Stat. (2001) ("Direct appeals provided for in this chapter [which pertains to criminal cases] are a matter of right."). A criminal defendant pursuing a first appeal as a matter of right is guaranteed the right to effective assistance of appellate counsel. See Evitts v. Lucey, 469 U.S. 387, 396, 105 S.Ct. 830, 83 L.Ed.2d 821 (1985) ("A first appeal as of right therefore is not adjudicated in accord with due process of law if the appellant does not have the effective assistance of an attorney."). Here, Sims (who was incarcerated at the time) asserted that his state-appointed counsel failed to keep him apprised of the case status and did not properly provide him with a copy of the decision of the Fifth District below. This Court found the arguments persuasive and, therefore, we granted the motion for reinstatement. *499 The failures of appellate counsel, which prevented Sims from timely filing his pro se notice to invoke discretionary jurisdiction with this Court, occurred when he was represented by a state-appointed attorney during the direct appeal to the Fifth District. Thus, these failures occurred during a proceeding in which Sims had the constitutional right to effective assistance of appellate counsel. Sims should not be penalized further due to the failures of appellate counsel on direct appeal. The dissent correctly acknowledges that "in the criminal context, jurisdictional deadlines must sometimes give way to the defendant's constitutional rights," dissenting op. at 511; however, it overlooks the fact that this rule should apply here.
The failures of counsel during the first direct appeal amounted to ineffective assistance of appellate counsel.[3] We conclude that the combined effect of the failures of appellate counsel here, which left Sims without timely notification that the Fifth District had issued a decision and without knowledge of the important content of that opinion, constituted deficient performance. Sims was unaware that the Fifth District had issued a decision due to these failures. This Court has specified that the issuance of the decision is the critical date for seeking discretionary review:
The jurisdiction of the supreme court described in rule 9.030(a)(2)(A) shall be invoked by filing 2 copies of a notice, accompanied by the filing fees prescribed by law, with the clerk of the district court of appeal within 30 days of rendition of the order to be reviewed.

Fla. R.App. P. 9.120(b) (emphasis supplied). Appellate counsel who fails to notify an incarcerated defendant-client in a timely manner that the district court has issued a decision on direct appeal, which in this case included material information on the face of the opinion, where that defendant may wish to seek discretionary review of that decision in this Court, falls "measurably outside the range of professionally acceptable performance." Pope v. Wainwright, 496 So.2d 798, 800 (Fla.1986). Just as the duties of trial counsel do not end upon the imposition of a sentence, see Coleman v. State, 215 So.2d 96, 100 (Fla. 4th DCA 1968), the duties of appellate counsel during direct appeal do not end upon the presentation of oral argument in the appellate court. Instead, appellate counsel maintains the obligation of effective representation to the defendant-client at least until the decision of the appellate court is rendered and that decision is transmitted to the defendant. Under the rules of appellate procedure, criminal defendants possess the right to seek, in a pro se capacity, discretionary review from a decision rendered by a district court on direct appeal. See Fla. R.App. P. 9.120(b).[4] Here, the Fifth District issued *500 its decision, but appellate counsel failed to alert Sims to the fact that the decision had issued, failed to transmit that decision to the defendant in a timely manner, and did not disclose material matters which appeared in the opinion. The dissent focuses only on a nonissue concerning the performance of counsel during the discretionary-review stage (i.e., no right to counsel to file a notice to invoke), whereas the question presented here pertains only to the failures of counsel during the direct-appeal proceedings. The failures of appellate counsel during the first direct appeal precluded Sims from satisfying the formal time requirements of rule 9.120(b) to seek discretionary review in a pro se capacity. Therefore, these failures constituted deficient performance during the direct appeal (not during the discrete proceedings discussed by the dissent).
These failures of appellate counsel clearly resulted in prejudice. Here, the conflict and error were apparent on the face of the Fifth District's decision. In its decision, the Fifth District made the following statement:
In the present case there is substantial[,] competent evidence that the Victim was dragged after being hit by Mr. Sims' vehicle. Using the reasoning set forth in May, we conclude that there was a sufficient causal connection between the leaving of the accident scene and the death to justify the imposition of victim injury points, and that the trial judge did not abuse his discretion in doing so.
Mr. Sims has brought to our attention two cases from the Second District Court of Appeal that he believes stand for the proposition that victim injury points should not be assessed for the crime of which he was convicted. An examination of these cases, Rodriguez v. State, 684 So.2d 864 (Fla. 2d DCA 1996), and Geary v. State, 675 So.2d 625 (Fla. 2d DCA), review denied, 680 So.2d 422 (Fla.1996), however, reflects that our sister court concluded that in those cases there was no causal connection between the crimes and the victim injury. In the present case, however, as we have indicated, there is a nexus between the death of the Victim and the crime.
Sims, 869 So.2d at 48 (citations omitted). If Sims had received a copy of the opinion in a timely fashion, he could have timely discerned that jurisdiction in this Court may have been availablebased upon the clear conflict between the cases set forth on the face of the decisionto remedy the miscarriage of justice that the Fifth District failed to correct. See id. at 49 ("[W]e conclude that the trial court properly assessed victim injury points in connection with the sentencing of Mr. Sims."). Sims eventually recognized this conflict and error but did so (due to the failures of counsel) in an untimely manner.[5] In the context *501 of this case, the failures of counsel undermine confidence in the correctness of the result reached by the district court because Sims clearly had a remedy if he had been afforded the appropriate time to seek discretionary review.[6] Thus, counsel's deficiencies resulted in prejudice to Sims.
The instant proceedingi.e., discretionary review of a decision from the district court on direct appealis the proper forum in which to remedy this ineffective assistance of appellate counsel, which occurred during the direct first appeal. The dissent correctly recognizes that ineffective-assistance claims are generally limited to consideration in separate collateral reviews but then, strangely, fails to acknowledge the exception that is clearly applicable to the circumstances of this *502 case. See dissenting op. at 512-14 & n. 20. A claim of ineffective assistance may be considered during the direct appellate proceedings if the "ineffectiveness is apparent on the face of the record and it would be a waste of judicial resources to require the trial court to address the issue." Blanco v. Wainwright, 507 So.2d 1377, 1384 (Fla. 1987); see also Rutherford v. Moore, 774 So.2d 637, 648 (Fla.2000); Martinez v. State, 761 So.2d 1074, 1078 n. 1 (Fla.2000); Mansfield v. State, 758 So.2d 636, 642 (Fla.2000); Owen v. State, 560 So.2d 207, 212 (Fla.1990); Stewart v. State, 420 So.2d 862, 864 & n. 4 (Fla.1982). First, the ineffectiveness of appellate counsel on direct appeal is apparent from the face of the record. Even though an evidentiary hearing to analyze these failures by appellate counsel has not occurred, we are able to clearly discern that appellate counsel was ineffective. Second, it would be a waste of judicial resources for this Court not to address this ineffective-assistance claim at the first opportunity during this proceeding. Here, the ineffective assistance of appellate counsel occurred after the Fifth District rendered its decision. The prejudice pertains to the inability of Sims to protect himself in a pro se capacity by seeking our discretionary review through this noncollateral proceeding. Thus, by treating the notice to invoke as timely filed and deciding this case on the merits, we are in the best position to provide an immediate remedy for this ineffective-assistance claim. The dissent concludes that we should require Sims to file a postconviction claim before these failures of appellate counsel may be remedied. See dissenting op. at 513-14 n. 20. We certainly could do so and generate years of unnecessary litigation, which, in turn, would lead to the entirely avoidable expenditure of additional time and resources. However, this unnecessary delay in favor of a collateral proceeding would constitute both a waste of judicial resources and amount to legal churning.
Sims' constitutional right to effective assistance of appellate counsel is directly implicated, and we clearly possess the authority to grant the motion for reinstatement and thereby treat the belated filing as timely.[7] We acknowledge that the rules *503 of appellate procedure, as they previously existed, did not specifically address the circumstances of the instant casei.e., the failure of a criminal defendant to file a notice to invoke within the thirty-day requirement due to a violation of the constitutional right to effective assistance of counsel during direct appeal. Thus, rigid application of the formal rules promulgated by this Court would have allowed for the perpetuation of violations of the constitutional right to effective assistance of counsel. This Court is empowered to amend the current time requirements so that belated notices to invoke filed under such circumstances may be treated as timely under the rules of appellate procedure. A similar rule already exists for belated appeals during collateral criminal proceedings. See Fla. R.App. P. 9.141(c) (entitled "Petitions Seeking Belated Appeal or Alleging Ineffective Assistance of Appellate Counsel."; this rule allows a petition for belated appeal to be filed more than two years after the filing time requirement if the petitioner "was unaware an appeal had not been timely filed or was not advised of the right to an appeal" and should not have discovered such facts through due diligence).
To more effectively prevent this potential for injustice, we now choose to adopt an amendment to Florida Rule of Appellate Procedure 9.141(c). See In re Amendments to Fla. R.App. Pro. 9.141, 992 So.2d 233 (Fla. 2008). As previously worded, rule 9.141(c) did not address proceedings in this Court. Accordingly, on our own motion, we have adopted new subdivision (c)(6) to clarify the procedure for seeking belated discretionary review or belated appeal in this Court:
(6) Supreme Court. Petitioners seeking belated discretionary review or belated appeal in the supreme court shall follow procedures prescribed in this rule.
In re Amendments to Fla. R.App. Pro. 9.141, 992 So.2d at ___. Given the evident ineffective assistance of appellate counsel that occurred on direct appeal and Sims' filing of the motion for reinstatement with this Court, he has properly invoked our jurisdiction to resolve this belated discretionary-review proceeding.[8]

*504 B. Causal Connection to Impose Victim-Injury Points
Sims contends that the imposition of victim-injury points by the trial court should be reversed. In Florida, the decision of a trial court to impose victim-injury points is subject to an abuse-of-discretion standard. See Key v. State, 837 So.2d 535, 536 (Fla. 2d DCA 2003). However, here, Sims contends that the trial court did not follow the law and instead misinterpreted sections 316.027(1)(b) and 921.0021(7)(a), Florida Statutes (2001). This is a pure question of law, which is subject to de novo review. See Borden v. East-European Ins. Co., 921 So.2d 587, 591 (Fla.2006) (holding that the issue under review was "a question of statutory interpretation and thus is subject to de novo review"); Jupiter v. State, 833 So.2d 169, 170 (Fla. 1st DCA 2002) (holding that the decision of the trial court to assess victim-injury points for the third-degree murder conviction, but not for the false-imprisonment conviction, was a pure issue of law subject to de novo review). Therefore, we review de novo the decision of the trial court to impose victim-injury points.
Here, Sims asserts that victim-injury points should not have been imposed because the death of the victim was not a direct result of his underlying offense, which was leaving the scene of an accident resulting in death. According to Sims, to impose victim-injury points, the statute requires a causal connection between the death or injury of the victim and the underlying offense. As a preliminary matter, we conclude that this causation claim has been properly preserved for appellate review. In Florida, a specific, contemporaneous objection is necessary to preserve a sentencing error. See State v. Montague, 682 So.2d 1085, 1087 (Fla.1996) *505 (holding that the failure of the defendant to raise the sentencing-error issue in the trial court was fatal to his appellate claim). The rationale behind this requirement is that such an objection places the trial court on notice of the alleged error and permits immediate correction at an early stage. See F.B. v. State, 852 So.2d 226, 229 (Fla.2003). Although not in the form of an objection, Sims placed the trial court on notice of his position with regard to the imposition of victim-injury points at the outset of the sentencing proceeding. Sims alerted the trial court that the definition of "victim injury" arguably included the "direct result" language of section 921.0021, Florida Statutes (2001). The trial court also recognized that to permit the imposition of victim-injury points, case law required the crime to be a cause of death. Therefore, the causation claim was properly presented to the trial court and preserved for appellate review.
Based upon the plain language of section 921.0021(7)(a), which defines "victim injury" for the purpose of scoring victim-injury points, we conclude that under these facts, the imposition of such points for leaving the scene in violation of section 316.027(1)(b) was incorrect. See Koile v. State, 934 So.2d 1226, 1233 (Fla.2006) ("[T]his Court must first look to the plain language of the statute, and if the statute is ambiguous on its face, the Court can only then rely upon the rules of statutory construction in order to discern legislative intent."). Section 921.0021(7)(a) applies here because it concerns felony offenses committed on or after October 1, 1998, and Sims committed the alleged offense on May 12, 2001. Section 921.0021(7)(a) provides:
"Victim injury" means the physical injury or death suffered by a person as a direct result of the primary offense, or any additional offense, for which an offender is convicted and which is pending before the court for sentencing at the time of the primary offense.
(Emphasis supplied.) This "direct result" language clearly imparts and includes a causation requirement, which must exist between the death of the victim and the charged offense of leaving the scene of an accident resulting in death. In Geary and Rodriguez, the Second District correctly recognized and applied the causation requirement. Conversely, the decision of the Fourth District in May is factually distinguishable from both Geary and Rodriguez; nevertheless, May also correctly recognized and applied the statutory causation requirement. Additionally, in Schuette v. State, 822 So.2d 1275 (Fla.2002), this Court held that for the imposition of a restitution award, there must be a causal connection[9] between the accident that produced damages and the underlying crime. See id. at 1284. We reasoned that section 775.089(1)(a), Florida Statutes (2001), which states that restitution shall be ordered for any "[d]amage or loss caused directly or indirectly by the defendant's offense," imposes a causation requirement. Schuette, 822 So.2d at 1280 (emphasis supplied). This statutory language is similar to the "direct result" language of section 921.0021(7)(a). Accordingly, here, a similar interpretation of section 921.0021(7)(a), requiring the existence of a causal connection to impose victim-injury points, is warranted. Moreover, if the imposition of a restitution award, which results in monetary loss, entails a causation requirement, a causal connection is also required for the imposition of victim-injury points, which can lead to the *506 much more significant loss of personal liberty through the imposition of a longer sentence. Finally, in interpreting Florida Rule of Criminal Procedure 3.701(d)(7), which provides when victim injury "shall be" scored under the sentencing guidelines, this Court concluded that the Sentencing Guidelines Commission had recommended that victim injury be scored when the "injury occurred during the offense which led to the conviction." Fla. R.Crim. Pro. re Sentencing Guidelines (Rules 3.701 & 3.988), 509 So.2d 1088, 1089 (Fla.1987) (emphasis supplied). For these reasons, we conclude that a causal connection must clearly exist between the charged offense and the death of the victim to impose victim-injury points.
Crucial to the determination of whether a causal connection exists between the death of the victim and the alleged offense of leaving the scene of an accident resulting in death is a determination of when this particular criminal offense began. Sims was not charged with vehicular homicide or any other offense in which the crime actually involved the impact that caused the death. A conviction under that different circumstance would have satisfied the causation requirement for the imposition of victim-injury points. Instead, Sims was only charged with the offense of leaving the scene of an accident resulting in death. It is reasonable to conclude that the decision to charge Sims with this lesser offense was due to the circumstances surrounding the accident, which made the collision "nearly unavoidable."[10] Section 316.027(1)(b), which governs this offense, provides:
The driver of any vehicle involved in a crash resulting in the death of any person must immediately stop the vehicle at the scene of the crash, or as close thereto as possible, and must remain at the scene of the crash until he or she has fulfilled the requirements of s. 316.062. Any person who willfully violates this paragraph commits a felony of the second degree, punishable as provided in s. 775.082, s. 775.083, or s. 775.084.
Under this statute, the offense begins when the defendant leaves the scene with knowledge (actual or constructive) of having been involved in an accident resulting in death. See Triplett v. State, 709 So.2d 107, 108 (Fla. 5th DCA 1998) (holding that the similar offense of leaving the scene of an accident involving personal injury did not begin until the defendant "elected an affirmative course of action ... after he became aware that personal injury had occurred in the collision" (citing State v. Dumas, 700 So.2d 1223 (Fla.1997))); Fla. Std. Jury Instr. (Crim.) 28.4 ("To prove the crime of Leaving the Scene of an Accident... [the State] must prove the following... (Defendant) knew or should have known that [he] [she] was involved in an accident ... (Defendant) knew or should have known of the [injury to] [death of] the person...."). Logically, the requisite knowledge can only exist after the impact of the accident resulting in death.
In the instant case, the record clearly establishes that the cause of the victim's death occurred prior to the underlying offense. Dr. Terrence Steiner was the only medical expert to testify as to the cause of death. Steiner testified that "death was instantaneous, meaning ... a second or two." He based this testimony on the severity of the victim's injuries, *507 which in his view supported the conclusion that the victim suffered an "instant death" upon impact. Unlike May, and contrary to the Fifth District's interpretation of this case, there was no medical or other evidence here to even suggest that any subsequent dragging of the victim's body was or could have been a cause of the victim's death.[11] Even if the victim died "a second or two" after impact, the offense of leaving the scene with the requisite knowledge still occurred after the initial impact, which Steiner testified was the sole cause of the victim's death. Additionally, the statement of passenger Sheila Asbury that Sims stated he saw the victim waving his arms just prior to impact, and the argument that this fact suggests Sims could have formed the requisite knowledge fairly quickly after impact, does not change the result. The death of the victim was the direct result of the initial impact, rather than the underlying offense which occurred only after the death. So, the causal connection, which is absolutely necessary to impose victim-injury points, simply does not exist in this case.[12]

III. CONCLUSION
For the foregoing reasons, we quash the decision of the Fifth District in Sims v. State, 869 So.2d 45 (Fla. 5th DCA 2004), and remand for proceedings consistent with this opinion. In so doing, we approve the decisions in Geary v. State, 675 So.2d 625 (Fla. 2d DCA 1996), Rodriguez v. State, 684 So.2d 864 (Fla. 2d DCA 1996), and May v. State, 747 So.2d 459 (Fla. 4th DCA 1999), to the extent that they are consistent with this opinion.
It is so ordered.
QUINCE, C.J., and ANSTEAD and PARIENTE, JJ., concur.
*508 CANTERO, Senior Justice, dissents with an opinion, in which WELLS and BELL, JJ., concur.
CANTERO, J., dissenting.
I do not quarrel with the majority's decision on the merits. The problem is that we do not have jurisdiction to decide the issue because the defendant did not timely file the notice seeking review in this Court.[13]
The majority finds express and direct conflict between the decision below and that of other district courts of appeal on the same issue. Such conflict, of course, would invoke our discretionary jurisdiction to review the case.[14] Sims's notice to invoke our jurisdiction, however, was untimely. It was filed on March 1, 2005, 297 days late. Sims's unsworn motion argues, among other things, that his counsel failed to provide Sims with a copy of the opinion and was "evasive" in responding to Sims's inquiries. When pursuing discretionary as opposed to mandatoryreview, a criminal defendant has no constitutional right to counsel, and by extension no right to effective assistance of counsel. Therefore, even accepting Sims's allegations as true, his untimely filing to invoke our jurisdiction is a jurisdictional defect that cannot be remedied. The majority's decision sets a dangerous precedent. Who knows how many defendants will now seek review in this Court years after a district court decision, alleging that counsel failed to advise them about possible review in this Court. Worse still, the Court renders this unfortunate precedent to remedy a perceived "miscarriage of justice" even though its decision will do nothing to help this defendanthe already has been released from prison. The Court's decision is both unnecessary and unhelpful to Sims. Additionally, in the majority's tireless effort to aid Sims in obtaining discretionary review, it has jumped through yet another hoop and adopted rule 9.141(c)(6). Rule 9.141(c)(6) provides for belated discretionary review in this Court. Previously such untimely review was only available by rule in our intermediate appellate courts.[15] As required *509 in the district courts, a defendant filing a petition for belated review under rule 9.141(c)(6) must file a sworn motion detailing the specific acts of his or her counsel's ineffective assistance. See In re Amendments to Fla. Rule of App. Pro. 9.141, 992 So.2d 233, ___ (Fla. 2008). Ironically, by filing an unsworn petition, Sims fails to comply with the requisite belated review procedure and thus cannot seek relief under the very rule adopted for his benefit.
To demonstrate our lack of jurisdiction, in the following sections I will (I) demonstrate that the petition was untimely under the relevant provisions of the Florida Constitution, Florida Statutes, and Florida Rules of Appellate Procedure governing the time limits for seeking discretionary review in our Court; (II) examine cases from our Court and the United States Supreme Court holding that, where counsel fails to timely file a notice of appeal, the Due Process Clause entitles defendants only to belated appeals as of right; (III) explain why the dismissal of discretionary review implicates no similar concerns and why no constitutional basis exists to grant belated discretionary review; (IV) explain why, even if we had jurisdiction, the petitioner has failed to demonstrate diligence in seeking review in this Court; and (V) illustrate the sweeping effects of the majority's disregard of our sound jurisdictional precedent, statutes, and rules.

I. CONSTITUTIONAL, STATUTORY, AND PROCEDURAL BARRIERS TO BELATED DISCRETIONARY REVIEW
The Florida Constitution requires us to adopt rules governing the time limits for seeking appellate review: "The supreme court shall adopt rules for the practice and procedure in all courts including the time for seeking appellate review...." Art. V, § 2(a), Fla. Const. (emphasis added). The legislature has recognized our authority to adopt appellate deadlines, as well as their jurisdictional nature:
59.081 Time for invoking appellate jurisdiction of any court.
(1) The time within which and the method by which the jurisdiction of any court in this state possessed of power to review the action of any other court, commission, officer or bureau may be invoked by appeal, certiorari, petition for review or other process by whatever name designated, and the manner of computing such time shall be prescribed by rule of the Supreme Court.
(2) Failure to invoke the jurisdiction of any such court within the time prescribed by such rules shall divest such court of jurisdiction to review such cause.

§ 59.081, Fla. Stat. (2005) (emphasis added).
No one has argued, and the majority does not conclude, that section 59.081(2) is unconstitutional. Therefore, we must start from the proposition that, unlike other defectssuch as requesting inappropriate relief or filing in the wrong courtthe untimely filing of a notice of appeal or notice to invoke is jurisdictional.
Pursuant to this constitutional and statutory mandate, Florida Rule of Appellate Procedure 9.120 requires notices to invoke our jurisdiction to be filed "within 30 days of rendition of the order to be reviewed." *510 Fla. R.App. P. 9.120(b). Both the statute and the rule are unambiguous. Read together, they clearly provide that the thirty-day time limit for filing a notice of appeal or notice to invoke is jurisdictional. In the context of notices of appeal, both this Court and the district courts of appeal have repeatedly acknowledged as much. See Peltz v. District Court of Appeal, Third District, 605 So.2d 865, 866 (Fla. 1992) (unanimously issuing writ of prohibition to prevent the district court of appeal from considering the appeal where the notice of appeal was untimely filed, and holding that "[t]he untimely filing of a notice of appeal precludes the appellate court from exercising jurisdiction"); State ex rel. Cantera v. District Court of Appeal, Third District, 555 So.2d 360, 362 (Fla.1990) ("An appellate court cannot exercise jurisdiction over a cause where a notice of appeal has not been timely filed."); Donin v. Goss, 69 So.2d 316, 318 (Fla.1954) ("[A] principle so well settled that no citation of authority is required, is that jurisdiction cannot be conferred on this Court by consent. Unless an appeal is taken within the prescribed time, this Court has no jurisdiction whatever."); Stephenson v. State, 640 So.2d 117, 119 (Fla. 2d DCA 1994) ("[I]t has long been the appellate jurisprudence of this state that `[t]he untimely filing of a notice of appeal precludes the appellate court from exercising jurisdiction.'") (quoting Peltz, 605 So.2d at 866), approved, 655 So.2d 86 (Fla.1995); Free Unitholders of Outdoor Resorts at Orlando, Inc. v. Outdoor Resorts of America, Inc., 460 So.2d 382, 383 (Fla. 2d DCA 1984) ("[The] notice of appeal was filed beyond the jurisdictional thirty days allowed for filing a direct appeal from judgment.... Therefore, this court lacks jurisdiction to entertain the ... appeal."); Hawks v. Walker, 409 So.2d 524, 525 (Fla. 5th DCA 1982) ("[T]he notice of appeal was not timely filed and this court lacks jurisdiction to consider the matter further.... A timely notice of appeal must be filed within 30 days in order for the court to have jurisdiction; late filing is a defect no one can correct, not even the court."); Dibble v. Dibble, 377 So.2d 1001, 1003 (Fla. 3d DCA 1979) ("The law is well-settled that the time within which an appeal may be taken to any court in this state `shall be prescribed by rule of the supreme court,' and the `failure to invoke the jurisdiction of any such court within the time prescribed by such rules shall divest such court of jurisdiction to review such cause.'") (citation omitted) (quoting § 59.081(1)-(2), Fla. Stat. (1977)); Kurz v. State, 303 So.2d 431 (Fla. 2d DCA 1974) (where the notice of appeal is filed outside the thirty-day jurisdictional time limit provided by law "[the] court does not have jurisdiction and has, therefore, no alternative but to [d]ismiss"); Hooks v. State, 250 So.2d 322, 323 (Fla. 4th DCA 1971) (holding that the court did not have jurisdiction to review the untimely notice of appeal, despite the fact that the indigent defendant "promptly made known his desire to appeal" and the public defender was "timely appointed to represent him for that purpose").[16] Today's decision contradicts *511 the plain language of section 59.081(2), which provides that failure to invoke the jurisdiction of any such court within the time prescribed by such rules shall divest such court of jurisdiction to review such cause" (emphasis added). This is not a procedural rule that the Court may blithely disregard. By enacting section 59.081, the Legislature rendered the jurisdictional time limits for seeking appellate review substantive law. See Oceania Joint Venture v. Ocean View of Miami, Ltd., 707 So.2d 917, 920 (Fla. 3d DCA 1998) (recognizing that the Legislature's mandate in section 59.081, Florida Statutes, elevates the time limit for seeking appellate review stated in rule 9.120(b) from procedural to substantive law); see also Salinger v. Salinger, 100 So.2d 393, 394 (Fla.1958) ("The notice of appeal, not having been filed within the time prescribed by statute, is ineffective to confer jurisdiction on this Court to entertain the cause."); Dupree v. Elleman, 139 Fla. 809, 191 So. 65, 67 (1939) ("The appellate jurisdiction of the courts is conferred by the constitution or by statutes not in conflict with the constitution; but such jurisdiction must be invoked in particular cases in accordance with controlling statutes, or the appellate jurisdiction will not be acquired in particular cases."). The Court gives no explanation for disregarding the statute.

II. IN CRIMINAL CASES, BELATED APPEALS REST ON THE CONSTITUTIONAL RIGHT TO DUE PROCESS AND EFFECTIVE ASSISTANCE OF COUNSEL
I certainly recognize that in the criminal context, jurisdictional deadlines must sometimes give way to the defendant's constitutional rights. When defense counsel fails to file a timely notice of appeal, for example, constitutional rights may be implicated. The Fourteenth Amendment guarantees a criminal defendant pursuing a first appeal as of right certain minimum safeguards. Evitts v. Lucey, 469 U.S. 387, 393, 105 S.Ct. 830, 83 L.Ed.2d 821 (1985) (quoting Griffin v. Illinois, 351 U.S. 12, 76 S.Ct. 585, 100 L.Ed. 891 (1956)). Among them is the right to the assistance of appellate counsel. Douglas v. California, 372 U.S. 353, 357, 83 S.Ct. 814, 9 L.Ed.2d 811 (1963) (holding that indigent defendants are invidiously discriminated against on direct appeal if they are denied the right to counsel); see also Halbert v. Michigan, 545 U.S. 605, 610, 125 S.Ct. 2582, 162 L.Ed.2d 552 (2005) ("[W]e hold that the Due Process and Equal Protection Clauses require the appointment of counsel for defendants ... who seek access to first-tier review...."). That right necessarily implies the right to effective assistance. Evitts, 469 U.S. at 397, 105 S.Ct. 830 ("[T]he promise of Douglas that a criminal defendant has a right to counsel on appeal ... would be a futile gesture unless it comprehended the right to the effective assistance of counsel."). This right is based on the Due Process Clause of the Fourteenth Amendment. Id. at 396, 105 S.Ct. 830 ("A first appeal as of right... is not adjudicated in accord with due process of law if the appellant does not have the effective assistance of an attorney."). Therefore, the dismissal of a defendant's first appeal as of right due to counsel's ineffectiveness deprives a defendant of due process. Evitts, 469 U.S. at 394, 105 S.Ct. 830. To address these situations, Florida Rule of Appellate Procedure 9.141(c) permits belated direct appeals upon a sworn statement that counsel failed to timely file a notice of appeal.
As these cases establish, defendants are entitled to the effective assistance of counsel *512 in their first appeals as of right. A defendant is deprived of due process if that appeal is dismissed due to counsel's failure to timely file a notice of appeal. As explained below, however, defendants have no constitutional right to counsel when seeking discretionary review. Therefore, an appellate counsel's failure to file a timely notice invoking such review implicates no constitutional rights.

III. NO CONSTITUTIONAL RIGHT EXISTS TO BELATED DISCRETIONARY REVIEW
That, as I have said, jurisdictional deadlines must sometimes give way to a defendant's constitutional rights does not mean that such deadlines are always irrelevant. The United States Supreme Court has held that the "right to counsel is limited to the first appeal as of right." Evitts, 469 U.S. at 394, 105 S.Ct. 830. It does not extend to discretionary appeals. Ross v. Moffitt, 417 U.S. 600, 619, 94 S.Ct. 2437, 41 L.Ed.2d 341 (1974) (holding that neither the due process nor equal protection clauses of the Fourteenth Amendment require states to provide indigent criminal defendants with court-appointed counsel for the purpose of seeking discretionary review in either state or federal court after the first appeal as of right); Halbert, 545 U.S. at 610, 125 S.Ct. 2582. Because criminal defendants have no constitutional right to counsel on discretionary review, they also have no right to the effective assistance of such counsel. Wainwright v. Torna, 455 U.S. 586, 102 S.Ct. 1300, 71 L.Ed.2d 475 (1982) (holding that a defendant is not deprived of effective assistance of counsel by his counsel's failure to file on time an application for certiorari to the state's highest court, where the defendant has no absolute right to appeal his conviction to the court and thus has no constitutional right to counsel). Therefore, the dismissal of discretionary review because of counsel's failure to timely file a petition for review deprives a defendant of neither due process nor effective assistance of counsel.
The case of Wainwright v. Torna arose out of Florida and is particularly instructive. The Third District Court of Appeal affirmed the defendant's felony convictions. Torna v. State, 358 So.2d 1109 (Fla. 3d DCA 1978). Torna instructed counsel to file a petition for writ of certiorari in this Court.[17] The petition was untimely, however, and we dismissed it. Torna v. State, 362 So.2d 1057 (Fla.1978). Torna contested our dismissal in federal court, arguing that he was denied effective assistance of counsel. The Supreme Court rejected the claim:
Respondent was not denied due process of law by the fact that counsel deprived him of the right to petition the Florida Supreme Court for review. Such deprivationeven if implicating a due process interestwas caused by his counsel and not by the state. Certainly, the actions of the Florida Supreme Court in dismissing an application for review that was not filed timely did not deprive respondent of due process of law.
455 U.S. at 588 n. 4, 102 S.Ct. 1300.[18] Many other jurisdictions likewise have rejected *513 ineffective assistance of counsel claims in discretionary review proceedings.[19]
The majority's decision to review this case is directly contrary to Torna. Until now, there has been no specific rule that outlines relief for belated discretionary review in this Court. See majority op. at 502-03. Yet the majority claims to have the discretion to entertain this belated filing due to the constitutional principles implicated by the ineffective assistance of appellate counsel. Majority op. at 498-500. Torna instructs, however, that no such right to effective assistance exists on discretionary review. See Torna, 455 U.S. at 586, 102 S.Ct. 1300.[20] No constitutional *514 basis therefore exists for overriding the jurisdictional time limits governing discretionary review.[21] Although the majority attempts to distinguish Torna because here counsel neither filed a petition nor informed Sims of his right to seek review in this Court, it stands to reason that if no right exists to have counsel himself seek discretionary review, as Torna holds, then counsel does not have a duty to inform the defendant of that same right. Cf. Johnson v. State, 961 So.2d 195 (Fla.2007) (holding that absent an express duty to inform the defendant of his appellate rights, there is no right to a belated appeal based on the court's failure to inform the defendant of those rights.)
The majority cites nine unpublished orders in which the Court granted belated discretionary review.[22] Although the orders provide no reasoningwhether based on the constitution or otherwisewe did grant the motions for belated review due to counsel's failure to timely file the petition for discretionary jurisdiction. I dissented in these cases, for the same reason I do today. At least in those cases, however, the Court accepted belated review by unpublished order and ultimately denied review on the merits. The face of those orders does not even state why the cases were dismissed or why they were reinstated. Therefore, although those cases are wrong, they set no dangerous precedent. See Ullah v. State, 679 So.2d 1242, 1243 *515 (Fla. 1st DCA 1996) (publishing an opinion in order to set precedent where previous unpublished orders had failed to do so). The majority's opinion today, however, establishes a mechanism for future petitioners to seek belated discretionary review. It eviscerates the time limit in rule 9.120(b) as a jurisdictional requirement and renders it merely advisory.
The majority also justifies reinstating this case because the imposition of victim injury points in the decision below was a miscarriage of justice. Majority op. at 500, 503. But neither section 59.081(2) nor rule 9.120 contains a "miscarriage of justice" exception. No matter how much we may disagree with the opinion below, to invoke our jurisdiction parties must still file timely notices to invoke.[23]

IV. THE PETITIONER HAS FAILED TO DEMONSTRATE DILIGENCE IN FILING HIS PETITION
Even assuming that we had the jurisdiction to consider the petition, I would not exercise our discretion to review it. Sims's actions belie the majority's confidence that having received and been aware of this decision, Sims would have timely sought to "remedy the miscarriage of justice that the Fifth District failed to correct." Majority op. at 500.
The district court issued its decision in this case on March 5, 2004, and denied rehearing on April 7. See Sims, 869 So.2d at 45. The thirty-day period to seek review expired on May 7. By his own admission, on that same day Sims received a letter from his appellate counsel informing him that the Fifth District had issued an opinion in his case.[24] The letter, dated May 4, 2004, states: "I know that you have received the Opinion from the 5th DCA.... I have received the Mandate from the 5th DCA and will be preparing a Motion to Mitigate Sentence very soon. I will keep you advised."[25] With knowledge that a decision had been rendered and a mandate had issued in his case, Sims waited nearly ten months to file his notice to invoke our jurisdiction. We have denied review under less egregious circumstances, finding that the petitioners failed to exercise due diligence. See, e.g., Graff v. State, No. SC03-2483, 913 So.2d 596 (Fla. Apr.14, 2005) (finding due diligence was not exercised *516 when petitioner, having learned that rehearing was denied in August 2003, waited until December 2003 to file his habeas petition); Baker v. State, No. SC05-1656, 928 So.2d 334 (Fla. Sept.19, 2005) (finding petitioner failed to exercise due diligence because due to a misunderstanding he waited two months to file his notice to invoke discretionary jurisdiction).
Based on these admitted facts, the petitioner has failed to demonstrate that, once he learned about the district court's opinion, he acted diligently to seek review in this Court. Therefore, even if we had jurisdiction to review this case, we should not exercise it.

V. THE PRACTICAL EFFECT OF DISREGARDING JURISDICTIONAL PRINCIPLES
We can now expect to be inundated with motions to file belated review proceedings, citing this case. Contrary to the majority's belief, the Court's sua sponte rule imposing a two-year deadline will do little to dissuade defendants from seeking belated review. Many motionssome filed several months or even years after the decision under reviewwill claim it was counsel's fault, or that counsel did not inform the party of the right to review, or that the decision below was "a miscarriage of justice." Whether that vague standard is satisfied, of course, will be in the eye of the beholder. Because by definition all appellants claim that the decision below was wrong, and because whether an erroneous decision resulted in a miscarriage of justice is simply a value judgment, every appellant seeking belated review will argue that the decision below was a "miscarriage of justice." And apparentlyas happened in this casesuch motions need not even be sworn. Bare allegations will do. Presumably (though not self-evidently) most motions will be denied, but not before this Court will have to wade through pages and pages of reasons justifying the filing of late notices. The only limit to denying belated review will be the Court's discretion, and the only limit to the motions seeking it will be the parties' imagination.

VI. CONCLUSION
Even if we accept Sims's unsworn assertion that his counsel was to blame for his failure to file a timely notice to invoke our jurisdiction, it is an unfortunate but incurable jurisdictional defect. The Court's decision to grant belated review eviscerates years of decisions, both from this Court and from the district courts of appeal, recognizing that the time limits for filing notices (whether of appeal or for discretionary review) are jurisdictional. It also directly contradicts a statute to the same effect. It is bad precedent designed to remedy a perceived miscarriage of justice that, as even the defendant concedes, no longer exists. Therefore, I respectfully dissent.
WELLS and BELL, JJ., concur.
NOTES
[1] In May, the Fourth District affirmed the imposition of victim-injury points after an expert testified that the dragging of the victim underneath the vehicle, which occurred after the defendant began the offense of leaving the scene, was a cause (in combination with the initial impact) of the victim's death. See 747 So.2d at 460.
[2] In both of these cases, the respective courts refused to impose victim-injury points because the injury or death had already occurred prior to the defendant leaving the scene. See Rodriguez, 684 So.2d at 865; Geary, 675 So.2d at 626. In effect, the injury or death would have occurred (and the injury in Geary would have remained unchanged) even if the defendant had remained at the scene.
[3] Although there may be some jurisdictions which follow the approach espoused by the dissent, there are also jurisdictions which follow the approach that we conclude is proper in Florida. See People v. Valdez, 789 P.2d 406, 408 (Colo. 1990) (holding that the failures of appellate counsel that preclude the timely filing of a petition for discretionary review may constitute ineffective assistance); Tolliver v. State, 629 S.W.2d 913, 915 (Tenn.Crim. App.1981) (holding that the failures of counsel that preclude a criminal defendant from filing a pro se petition for discretionary review may constitute ineffective assistance); Ex parte Riley, 193 S.W.3d 900, 901-02 (Tex. Crim.App.2006) ("It is the responsibility of counsel appointed on appeal to see the appeal of right through to the end.... Normally, when an appellant is not informed of the decision of the court of appeals by his attorney in time for him to file a petition for discretionary review, it will be ineffective assistance of counsel.").
[4] Again, this same right exists in other jurisdictions. See Valdez, 789 P.2d at 408 ("[U]nder our rules of appellate procedure ... a petition requesting this court to exercise its appellate jurisdiction to review a lower court judgment is an application of right."); Tolliver, 629 S.W.2d at 915 ("[A] defendant does have a right to file a pro se petition [for discretionary review], and failure of his counsel to so advise him of this right may result in a finding that his counsel ineffectively represented him."); Ex parte Riley, 193 S.W.3d at 901 ("The right of [the criminal defendant] to file a petition for discretionary review is part of the complete appellate process, and this right exists regardless of the probability of success of the appeal and regardless of whose fault it was that [the petitioner] was deprived of the opportunity to file a petition for discretionary review, so long as it was not the fault of the petitioner.").
[5] The dissent concludes that it was Sims' alleged lack of diligence that caused an untimely filing of the notice to invoke. See dissenting op. at 515-16. We disagree. The documentsi.e., the prison mail log, and the letter from appellate counsel (dated May 4, 2004)submitted by Sims, as attachments to the motion for reinstatement, support the conclusion that the untimely filing resulted from the fault of appellate counsel, not Sims. The thirty-day period to seek discretionary review in this Court expired on May 7. However, the prison mail log establishes that the letter from appellate counsel was not received until that same day. The letter contained the following bald statement: "I know that you [Sims] have received the [o]pinion from the 5th DCA." However, appellate counsel provided no documentation (such as a separate letter that purported to attach a copy of the decision) to refute Sims' assertion that he did not receive a copy of the decision until June 14. Additionally, this fact is corroborated by the following: (1) the prison log establishes that no mail that could have included a copy of the decision was received prior to June 14; and (2) a letter from appellate counsel (dated February 17, 2005), written in response to a Florida Bar complaint filed by Sims against counsel for these same failures, stated that "the Record on Appeal was mailed to Mr. Sims on June 10th."

The letter (received on May 7) did advise Sims that the Fifth District had issued a decision, but we cannot conclude that Sims was at fault for the failure to file a notice to invoke from prison on the same day. Instead, the fault lies with the appellate attorney, and there is no evidence which refutes that May 7 (over two months after the decision was issued) was the first day that he even advised Sims that a decision had been issued. Additionally, this letter did not even contain adequate information for anyone to do anything. The notice to invoke must include the "date of rendition of the order to be reviewed." Fla. R.App. P. 9.120(c). The letter contained no mention of when the Fifth District had issued its decision or denied rehearing. Also, because Sims did not receive a copy of the decision until June 14, he could not have filed the supporting brief on jurisdiction within the mandated ten-day period even if he could have filed the notice to invoke on May 7. See Fla. R.App. P. 9.120(d) ("Petitioner's brief ... accompanied by an appendix containing only a conformed copy of the decision of the district court of appeal, shall be served within 10 days of filing the notice." (emphasis supplied)).
[6] We also conclude that, as an ancillary duty to the obligation to deliver a copy of the decision, appellate counsel should advise their criminal-defendant client of the right to seek discretionary review in a pro se capacity. See Valdez, 789 P.2d at 408 ("Certainly an appellate attorney's responsibilities include the obligation to advise his or her client of the possibility of discretionary review...."); Tolliver, 629 S.W.2d at 915; Ex parte Riley, 193 S.W.3d at 902-03 ("[A]n appellate attorney is required to give his client notice regarding the right to file a petition for discretionary review...."). Here, in the letter received on May 7, appellate counsel stated that he (counsel) could not "successfully obtain jurisdiction in the Florida Supreme Court" and "there will be no further appellate review." (Emphasis supplied.) After reading this letter, it was reasonable for Sims to conclude that, in addition to counsel not being able to obtain jurisdiction for discretionary review, he had no right to seek discretionary review in a pro se capacity. The dissent attempts to "ride" on the fact that Sims waited approximately ten months after he received the letter on May 7 to file the notice to invoke. See dissenting op. at 516. However, this delay is clearly explained by the failure of appellate counsel to promptly advise Sims that he had the right to seek discretionary review in a pro se capacity, which contributed to Sims' later confusion (when he subsequently discovered that he had such a right) with regard to the documents he was required to attach to a filing for discretionary review.
[7] The dissent asserts that this Court's "decision to review this case is directly contrary to [Wainwright v. Torna, 455 U.S. 586, 102 S.Ct. 1300, 71 L.Ed.2d 475 (1982)]." Dissenting op. at 514. We disagree. First, in Torna, the High Court decided a different, distinct issuei.e., a criminal defendant is not deprived of effective assistance by the failure of retained counsel to timely file for discretionary review. See 455 U.S. at 586-88, 102 S.Ct. 1300. Here, we address the ineffective assistance that appointed appellate counsel rendered on direct appeal, which precluded an incarcerated criminal defendant from timely seeking our discretionary review. As it does through much of its opinion, the dissent incorrectly focuses only on the fact that this proceeding is discretionary in nature, which ignores the problematic circumstances of the instant casei.e., appointed counsel provided ineffective assistance during a direct-appeal proceeding, which is guaranteed as a matter of right. Second, the portion of Torna quoted by the dissent is dicta. See dissenting op. at 512. This quote appears within a footnote that is unnecessary to the holding of the Court. See Torna, 455 U.S. at 588 n. 4, 102 S.Ct. 1300. Third and finally, even if Torna was controlling, the High Court's decision merely sets a federal baseline for a criminal defendant's constitutional rights with regard to filing for discretionary review. Such a holding would not prevent this Court from concluding that, in Florida, criminal defendants are entitled to competent representation, which includes delivery of the decision on appeal along with correct, pertinent information.

The dissent relies exclusively upon civil cases to support an assertion that Florida courts do not possess jurisdiction when notices of appeal have been untimely filed (the dissent concedes that any criminal cases that it has cited pre-date the rules of appellate procedure as they existed before our most recent amendment of rule 9.141(c)). See dissenting op. at 510-11 & n. 16 (citing, e.g., Peltz v. Dist. Court of Appeal, Third Dist., 605 So.2d 865 (Fla. 1992) (the decision below i.e., Brafman v. Peltz, 507 So.2d 1110 (Fla. 3d DCA 1987) (table)establishes that the case is civil)); State ex rel. Cantera v. Dist. Court of Appeal, Third Dist., 555 So.2d 360 (Fla.1990) (civil judgment obtained against a bank); Donin v. Goss, 69 So.2d 316 (Fla. 1954); Free Unitholders of Outdoor Resorts at Orlando, Inc. v. Outdoor Resorts of Am., Inc., 460 So.2d 382 (Fla. 2d DCA 1984); Hawks v. Walker, 409 So.2d 524 (Fla. 5th DCA 1982); Dibble v. Dibble, 377 So.2d 1001 (Fla. 3d DCA 1979); Oceania Joint Venture v. Ocean View of Miami, Ltd., 707 So.2d 917 (Fla. 3d DCA 1998); Salinger v. Salinger, 100 So.2d 393 (Fla.1958). If this were correct, it would entirely undermine belated review in all criminal cases. However, in civil litigation, the same constitutional right to effective assistance of counsel on direct appeal does not exist. See Evitts, 469 U.S. at 393-94, 105 S.Ct. 830 ("[T]he principles of Griffin required a State that afforded a right of appeal to make that appeal more than a `meaningless ritual' by supplying an indigent appellant in a criminal case with an attorney." (emphasis supplied)). Additionally, none of the cases relied upon by the dissent address the reasons that the respective civil parties failed to file a notice of appeal in a timely manner. There are no facts which suggest that the parties failed to file in a timely manner due to some failure of a constitutional magnitude. In sum, the dissent relies upon inapposite precedent.
[8] We also conclude that the instant case is not moot. The dissent asserts that because Sims has "finished serving the incarcerative portion of his sentence," the case is moot. Dissenting op. at 515 n. 23. However, the dissent fails to acknowledge that this Court can decide the merits of a claim that is of great importance, even if the claim would otherwise be moot. See, e.g., State v. Matthews, 891 So.2d 479, 483 (Fla.2004) (holding that even though the defendant had been released from prison, the claim involving the "applicability of Tripp credit to habitual felony offender sentences" could be heard, in part, because it was of great public importance). The question of whether victim-injury points should be imposed, which results in a longer sentence of imprisonment and loss of liberty, in the absence of a causal connection between the underlying offense and the victim's death is a claim of great public importance. Cf. Seagrave v. State, 802 So.2d 281, 285, 291 (Fla. 2001) (stating that the question presented which was subsequently decided on the merits concerning how "sexual contact" should be interpreted for the imposition of victim-injury points was certified to this Court as a matter of great public importance).

Moreover, Sims' claim is likely to recur yet evade review. Cf. Matthews, 891 So.2d at 483-84. A defendant leaving the scene of an accident after a victim's instantaneous death upon vehicle impact is not an uncommon factual scenario. Cf. Rykiel v. Rykiel, 838 So.2d 508, 512 (Fla.2003) (holding that an issue relating to the taxability of alimony payments is likely to recur, which negates the fact that the issue is technically moot). It is reasonably likely that if anyone is convicted of this same offense (involving a separate incident) in the future, he or she will again have served the term of imprisonment prior to the completion of the appellate process on this issue involving the imposition of victim-injury points. Cf., e.g., Kelley v. Rice, 800 So.2d 247, 250 (Fla. 2d DCA 2001) ("[M]ootness does not destroy a court's jurisdiction if the question raised is of great public importance or is likely to recur, [Bowles v. Singletary, 698 So.2d 1201, 1202 n. 3 (Fla. 1997)]; Holly v. Auld, 450 So.2d 217, 218 n. 1 (Fla. 1984); Blalock v. Rice, 707 So.2d 738, 739 (Fla. 2d DCA 1997), or if the error is capable of repetition yet evading review. N.W. v. State, 767 So.2d 446, 447 n. 2 (Fla.2000) [(`This case became moot in December 1997 when the six months of community control expired. However, because periods of supervision or community control may expire before a case may be reviewed, this case presents a controversy capable of repetition, yet evading review, which should be considered on its merits.' (emphasis supplied))]."). Therefore, in light of well-established Florida precedent, mootness is not a genuine issue in this case.
[9] In addition to "but for" causation, Schuette referenced a possible proximate-causation requirement, comparable to that required in a tort action. See 822 So.2d at 1282.
[10] The circumstances include the following: (1) the lack of lighting; (2) the victim was a dark-complexioned man wearing dark clothing, making it very difficult to see him on the night of the incident; (3) the victim was lying in the middle of the road on his bicycle with a blood alcohol level of .196; (4) the bicycle did not have a light; and (5) if Sims had swerved to avoid hitting the victim, he would have collided with a guardrail on either side.
[11] Contrary to the State's assertion, the testimony of Steiner that the victim died because he was "struck and overrun by a vehicle" is not evidence that any dragging of the body was a cause of death. Instead, this testimony is consistent with Steiner's other statement that the "death was instantaneous, meaning... a second or two." The "struck and overrun" language is simply an expression that Sims' death was caused by an auto accident. Additionally, the testimony of Sergeant Anthony Sapp that the victim was "drug down the road for a bit and was dead" is also of no significance to the causation issue. Sapp is not a medical expert, his statement does not address the cause of death, and his statement is not inconsistent with the expert evidence that this victim died upon impact.
[12] Sims also asserts that the trial court's decision to impose victim-injury points, without an accompanying jury finding that he caused the death of the victim by leaving the scene, violated his right to a jury trial under Apprendi v. New Jersey, 530 U.S. 466, 120 S.Ct. 2348, 147 L.Ed.2d 435 (2000), Blakely v. Washington, 542 U.S. 296, 124 S.Ct. 2531, 159 L.Ed.2d 403 (2004), and United States v. Booker, 543 U.S. 220, 125 S.Ct. 738, 160 L.Ed.2d 621 (2005). This claim involving Apprendi and its progeny was not properly preserved for appellate review. Like any other type of alleged error, the general rule is an objection that is both specific and contemporaneous must be raised to allow review of an Apprendi claim. See F.B., 852 So.2d at 229; Marshall v. State, 789 So.2d 969, 970 (Fla. 2001). During the sentencing proceeding, Sims made a contemporaneous objection to the scoresheet proposal of the State: "Your Honor, we're objecting to all of this." However, this general objection did not reference Apprendi, Blakely, or Booker. Additionally, there is nothing in the record to indicate that the trial court was on notice that Sims believed the imposition of victim-injury points was error under Apprendi and related cases. See F.B., 852 So.2d at 229. Finally, there is no mention of Apprendi or its progeny in the Fifth District's decision below, which suggests that Sims did not assert this claim before either the trial court or the Fifth District. See Sims, 869 So.2d 45. Accordingly, Sims waived this particular claim and is procedurally barred from presenting it for our consideration on discretionary review.
[13] The majority characterizes the dissent as focusing on a "non-issue and that which is not required at the discretionary review stage." Majority op. at 500. But jurisdiction is never a non-issue. To the contrary, in every case, especially in a court of limited jurisdiction such as ours, it is a threshold issue. See In re Holder, 945 So.2d 1130, 1134 (Fla.2006) ("[W]e recognize that our jurisdiction, which is outlined in the Florida Constitution, is a threshold matter that must be addressed before we can decide the merits of a case.")
[14] Although the defendant purported to invoke our "all writs" jurisdiction, the "all writs" provision of the Florida Constitution does not grant the Court jurisdiction to review cases. Instead, we must have an independent basis for jurisdiction. See Williams v. State, 913 So.2d 541, 543 (Fla.2005); St. Paul Title Ins. Corp. v. Davis, 392 So.2d 1304, 1305 (Fla. 1980). The majority treats the notice as one seeking review based on express and direct conflict. This is an appropriate use of Florida Rule of Appellate Procedure 9.040, and one which both we and the courts of appeal regularly employ. Subdivision (c) permits courts to correct petitions seeking an improper remedy. Unlike the untimely filing of the notice to invoke our jurisdiction, seeking the incorrect relief is not a jurisdictional defect.
[15] The right to belated review in the district courts, as provided by rule 9.141(c) and former rule 9.140(j), derives from the right to effective assistance of counsel. See generally In re Amendments to Fla. Rule of Appellate Procedure, 780 So.2d 834, 872 (Fla.2000); State v. Dist. Court of Appeal, 569 So.2d 439 (Fla. 1990), superseded by Fla. R.App. P. 9.140(j)(1); State v. Meyer, 430 So.2d 440 (Fla. 1983), abrogated by State v. Dist. Court of Appeal, 569 So.2d 439 (Fla. 1990). Although the majority has adopted the rule to govern "discretionary review or belated appeals" in this Court, the extension of the rule in this manner is inappropriate because, as I set forth in this dissent, such proceedings do not implicate the same due process concerns. Because the new rule fails to address problems similar to those present in a defendant's first appeal as of right, there is no justification for blatantly ignoring section 59.081(2), Florida Statutes (2005).
[16] The majority criticizes the dissent for referencing civil cases and criminal cases that predate the amendment to Fla. Rule of Appellate Procedure 9.140, allowing for belated review. However, to date, this Court has not published decisions relating to the treatment of belated discretionary appeals in this Court, presumably because, until now, this Court deferred to jurisdictional time limits. Petitions seeking belated appeal or alleging ineffective assistance of appellate counsel were more prevalent in the district courts. In 1996, rule 9.140(j) was adopted, thus alleviating that concern and the need to discuss the issue in those courts. See Amendments to the Fla. Rules of Appellate Procedure, 685 So.2d 773 (Fla. 1996) (adopting Fla. R.App. P. 9.140(j)). Therefore, citation to cases predating the rule is a product of the available precedent.
[17] At the time, this Court had discretionary jurisdiction to issue writs of certiorari. Art. V, § 3(b)(3), Fla. Const. (1979). In 1980, the Florida Constitution was amended and that basis for jurisdiction no longer exists.
[18] Although the majority dismisses footnote four in Wainwright as dictum, that footnote stems directly from the Court's holding. The footnote expands on the Court's conclusion that when counsel fails to timely seek discretionary review, a criminal defendant is not deprived of effective assistance. The Court's choice to explain its reasoning in a footnote does not make the language any less significant or "unnecessary to the holding." See Padgett v. State, 875 N.E.2d 310, 315-16 (Ind. Ct.App.2007) ("While ... `footnotes are comments upon the text rather than a part of it,' such footnotes, as are indicative of an intent to benefit the bench and bar, are deserving of `respect from a[] ... court and require[] special consideration.'") (quoting Ewing v. State, 171 Ind.App. 593, 358 N.E.2d 204, 206 (1976)).
[19] See Ingram v. State, No. CR-03-1707, ___ So.2d ___, 2006 WL 2788984 (Ala.Crim.App. Sept.29, 2006) ("Our cases establish that the right to appointed counsel extends to the first appeal of right, and no further. Thus, we have rejected suggestions that we establish a right to counsel on discretionary appeals.") (quoting Pennsylvania v. Finley, 481 U.S. 551, 555, 107 S.Ct. 1990, 95 L.Ed.2d 539 (1987)); Kinsey v. State, 545 So.2d 200, 202-05 (Ala. Crim.App.1989) (rejecting defendant's postconviction claim of ineffective assistance of counsel based on counsel's failure to timely pursue discretionary state review following the affirmance of the defendant's conviction and sentence in his first appeal as of right); Malone v. State, No. S00C0341, 2000 Ga. LEXIS 280, *1 (Ga. Mar. 10, 2000) (taking the position that absent a right to federal or state counsel for the purpose of pursuing discretionary state review, a criminal defendant cannot seek belated discretionary review in the state's highest court based upon ineffective assistance of counsel); Wooten v. State, 245 Ga. 724, 266 S.E.2d 927, 927 (1980) ("Pretermitting the question of whether the superior court has the authority to appoint counsel to pursue such discretionary appeals, we find, that absent such an order, appointed counsel has no duty to apply for writ of certiorari to the Court of Appeals on behalf of his indigent client."); Foy v. State, 17 Kan. App.2d 775, 844 P.2d 744, 745 (993) (holding that because a criminal defendant "had no constitutional right to counsel to pursue a discretionary appeal to the Kansas Supreme Court, he [was] not deprived of the effective assistance of counsel by his appointed counsel's failure to file a petition for review or the failure of such counsel to inform [him that] he had the option of seeking discretionary review"); Talley v. Maggio, 451 So.2d 1358, 1361 (La.Ct.App.1984) ("In the absence of such a constitutional right [to counsel], counsel's alleged failure to inform relator of when to apply for such review is not a deprivation of the constitutional right to effective assistance of counsel."); see also Harris v. State, 704 So.2d 1286, 1292 (Miss.1997) ("The majority view, and in our judgment the prudent one, is that, in the absence of a specific state statute or rule, the failure of counsel to advise his client of the possibility of further review does not require suspension of the rules for an out-of-time consideration of a party's petition for writ of certiorari."), abrogated on other grounds by Jackson v. State, 732 So.2d 187 (Miss.1999); State v. Simpson, 176 N.C.App. 719, 627 S.E.2d 271, 275 (2006) ("[A] defendant cannot base an ineffective assistance of counsel claim on the failure of appellate counsel to pursue an appeal past the initial appeal [because] ... there is no constitutional right to counsel for a discretionary appeal."); Douglas v. State, 369 S.C. 213, 631 S.E.2d 542, 543 n. 1 (2006) (overruling previous precedent to the extent that it may be read to hold that a claim of ineffective assistance of counsel may be made against an attorney involved in pursuing certiorari after a direct appeal because "an individual has no constitutional right to the effective assistance of counsel when seeking discretionary appellate review").
[20] The majority's decision even to reach the issue of effective assistance of counsel before any postconviction claim has been filed is equally perplexing. Claims of ineffective assistance of counsel are generally limited to collateral review and ordinarily are not considered on direct appeal. See Bruno v. State, 807 So.2d 55, 63 (Fla.2001) ("[A] claim of ineffectiveness generally can be raised in a 3.850 motion but not on direct appeal."); Blanco v. Wainwright, 507 So.2d 1377, 1384 (Fla. 1987) ("Generally, ineffective assistance of trial counsel will not be cognizable on direct appeal...."). On the rare occasion that ineffectiveness is apparent on the face of the record, appellate counsel may successfully raise the issue of counsel's effectiveness on direct appeal. Blanco, 507 So.2d at 1384. But here we have no affidavits, no testimony, no evidence supporting the Petitioner's claim. We have only the Petitioner's bald allegations. The majority thus goes beyond what the rules require when a right to effective assistance does exist. See Fla. R.App. P. 9.141(c) (requiring petitions for belated appeal to be sworn). The majority does not stop there, recognizing that "an evidentiary hearing to analyze ... failures by appellate counsel has not occurred," it goes on seemingly to conduct its own. See majority op. at 502; but see Ivey v. Dep't of Children & Family Servs., 974 So.2d 480 (Fla. 2d DCA 2008) (noting that appellate courts "of course cannot conduct evidentiary hearings"). Suggesting that to follow protocol would "generate years of unnecessary litigation and the expenditure of additional time and resources," the majority concludes, based on unsworn statements and the self-serving documents provided by Sims, that counsel was ineffective. See majority op. at 502. If our objective were solely to avoid "years of unnecessary litigation," we would eliminate postconviction claims altogether and decide every ineffective assistance of counsel claim on appeal. But we have decided that such a policy is neither practical nor desirable because, among other reasons, the record is not sufficiently developed on direct appeal to decide that issue. This case furnishes a prime example. We do not have any testimony whatsoever, and the limited documentation is only what Sims has filed to support his claim.
[21] Recently, the United States Supreme Court again upheld the jurisdictional time limits. In Bowles v. Russell, 551 U.S. 205, 127 S.Ct. 2360, 168 L.Ed.2d 96 (2007), a federal district court allowed the defendant an additional 17 days to file a notice of appeal, although the rules clearly allowed a maximum extension of only 14 days. Bowles filed his appeal within the 17 days the district court allowed, but after the 14-day period expired. The Supreme Court held that the time limit was jurisdictional.
[22] Rodriguez v. State, No. SC05-1442 (Fla. Mar. 2, 2006); Rios v. State, No. SC06-1144 (Fla. Nov. 7, 2006); Parks v. State, No. SC05-978 (Fla. Feb. 17, 2006); Curtis v. State, No. SC01-2342 (Fla. Apr.12, 2005); Saint-Fleur v. State, No. SC03-44 (Fla. Apr. 15, 2005); Lyons v. State, No. SC03-249 (Fla. May 4, 2005); Arrington v. State, No. SC02-669 (Fla. Jan. 6, 2004); Lorenz v. State, No. SC02-769 (Fla. Apr. 8, 2003); Jordan v. State, No. SC02-465 (Fla. Apr. 13, 2003).
[23] Ironically, despite the majority's eagerness to correct a miscarriage of justice, ultimately its opinion does no such thing. As the defendant's reply brief informs us, this case is moot because the defendant has finished serving the incarcerative portion of his sentence. The majority's holding on the merits will not reduce the defendant's prison time by even a day. It is therefore all the more perplexing why the majority chooses this case to set such a drastic precedent.
[24] The prison mail log included in the record on appeal demonstrates that Sims received appellate counsel's May 4 letter on May 7.
[25] The majority cites counsel's May 4 letter as irrefutable evidence that Sims was not notified that a decision had been issued until May 7, and that he did not receive a copy of the decision until June 14. The majority points to "the prison mail log," and "a letter from appellate counsel (dated February 17, 2005)," as corroborating these facts. The majority overlooks that Sims filed only the documentation that supports his claim. Sims contends he received no mailings before May 7 from either his attorney or the Fifth District informing him of a decision in his case, and he provides a mail log that begins on May 7. He fails to attach any mail logs beginning on March 5, when the district court issued its decision, which would show whether Sims had received notice of a decision before May 7. Without such evidence, appellate counsel's letter of May 4 is hardly beyond refute, especially given that the first line of the letter indicates that Sims had "received the Opinion from the 5th DCA." But this is why we have evidentiary hearings on these issues, and why the majority's decision to grant relief without one, and instead taking Sims's unsworn allegations at face value, is so unprecedented.