[DO NOT PUBLISH]

In the

# United States Court of Appeals

### For the Eleventh Circuit

_____

No. 23-11338

Non-Argument Calendar

_____

JUAN IVAN RODRIGUEZ,

Petitioner-Appellant,

*versus*

SECRETARY, DEPARTMENT OF CORRECTIONS,
ATTORNEY GENERAL, STATE OF FLORIDA,

Respondents-Appellees.

_____

Appeal from the United States District Court
for the Middle District of Florida
D.C. Docket No. 8:16-cv-02992-KKM-SPF

_____

Before LAGOA, BRASHER, and ABUDU, Circuit Judges.

PER CURIAM:

Juan Rodriguez, a counseled Florida state prisoner, appeals the denial of his petition for a writ of habeas corpus under 28 U.S.C. § 2254. We granted a certificate of appealability ("COA") to determine (1) whether the Florida trial court sentenced Rodriguez in excess of the statutory maximum based on facts not found by a jury beyond a reasonable doubt, in violation of *Apprendi v. New Jersey*, 530 U.S. 466 (2000); and, if so, (2) whether such error was harmless. Rodriguez's enhanced sentence rests on the jury's finding that his DUI manslaughter offenses "directly resulted" in the death of five victims. Rodriguez argues that this finding involves a higher degree of causation than his conviction required and that it was not established by the evidence presented at trial. For the reasons, stated below, we affirm the district court's denial of Rodriguez's habeas petition.

## I.     BACKGROUND

Rodriguez filed a habeas corpus petition, alleging that he was a Florida state prisoner serving five consecutive life sentences for his DUI manslaughter convictions. Rodiguez argued, among other things, that Florida's sentencing scheme violates *Apprendi* because it permits sentences to be increased over the otherwise applicable statutory maximum based on facts not found by a jury beyond a reasonable doubt. Rodriguez also argued that the statutory

maximum for his offenses was 15 years for each count but he was sentenced over that based on the conclusion that he caused the death of the victims even though the jury "did not determine specifically whether [he] caused the death[s] or merely contributed" and the evidence was in conflict on that point.

In response, the state argued that: (1) Rodriguez failed to exhaust his *Apprendi* claim because he raised it only on appeal and not before the sentencing court; (2) there was no *Apprendi* issue because the jury found that Rodriguez caused the deaths of victims in its guilty verdicts on DUI manslaughter, which is the fact underlying the enhancement; and (3) the jury was not required to distinguish between causing the deaths, and contributing to causing the deaths.

The state submitted exhibits showing that Rodriguez was charged on May 29, 2003, with five counts of DUI manslaughter and five additional counts.

Following trial, the state trial court instructed the jury that, to prove that Rodriguez had committed DUI manslaughter, the state had to show beyond a reasonable doubt that: (1) Rodriguez "drove a vehicle"; (2) that he was impaired or had a blood alcohol level of .08 or more; and (3) "as a result, [Rodriguez] caused or contributed to the cause of the deaths" of the five victims. The jury, in a general verdict, found Rodriguez guilty of five counts of DUI manslaughter and five counts of reckless driving.

At sentencing, the state argued that, under the ordinary statutory maximum for DUI manslaughter, Rodriguez could be

sentenced to a total of 75 years' imprisonment.  The state then consulted Rodriguez's Criminal Punishment Code Worksheet,[1] stating that Rodriguez had accumulated a total of 824.8 points, leaving out any points for reckless driving as it was a lesser included offense of DUI manslaughter.  The state then pointed out a provision of Florida law permitting the court to impose a life sentence whenever a defendant accumulates more than 363 sentence points.  The state trial court sentenced Rodriguez to life in prison on each DUI manslaughter count, all to run consecutively.  The state trial court did not explain its reasoning under Florida's Criminal Punishment Code. Rodriguez received no sentence on the reckless driving counts.

Rodriguez appealed, arguing that his sentence was enhanced beyond the statutory maximum based on facts not found by a jury beyond a reasonable doubt.  His sentence was summarily affirmed.

In this habeas action, Rodriguez argued that the state did not raise a procedural bar in his direct appeal and that the issue was there litigated on the merits, so it was fairly presented to state courts.

The district court denied Rodriguez's petition, finding that "because of how the trial court instructed the jury and the necessary factual findings contained therein, no *Apprendi* violation occurred here."  The district court also found that any *Apprendi* error

---

[1] It does not appear that a copy of Rodriguez's worksheet is in the record.  The template may be found at Fla. Stat. § 921.0024(1)(a).

would have been harmless because, based on the evidence, any reasonable jury would have found the enhancement applied. The district court denied a COA.

Rodriguez timely appealed. We granted a COA on the following two questions:

> (1) Whether, in denying Rodriguez's claim that his enhanced life sentences violated *Apprendi v. New Jersey*, 530 U.S. 466 (2000), the district court erred in concluding, based on the trial court's jury instructions, that the jury had found the facts necessary to support the enhancements by convicting Rodriguez on the substantive offenses?; and, if so,

> (2) Whether the district court erred in concluding that the potential *Apprendi* violation was harmless.

## II.    STANDARDS OF REVIEW

We review the denial or grant of habeas corpus relief *de novo*. *McNair v. Campbell*, 416 F.3d 1291, 1297 (11th Cir. 2005). "The district court's factual findings are reviewed for clear error, while mixed questions of law and fact are reviewed *de novo*." *Id*. "[A]ppellate review is limited to the issues specified in the COA." *Murray v. United States*, 145 F.3d 1249, 1251 (11th Cir. 1998).

A petition under § 2254 may not be granted with respect to a claim decided on the merits by a state court unless that decision was "contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court" or "resulted in a decision that was based on an unreasonable

determination of the facts." 28 U.S.C. § 2254(d)(1). Unless there are "indication[s] or state-law procedural principles to the contrary," state court denials of claims later presented in federal habeas proceedings are presumed to be on the merits. *Harrington v. Richter*, 562 U.S. 86, 99 (2011). If no explanation is given, the petitioner must show that "there was no reasonable basis for the state court to deny relief." *Id.* at 98.

Any fact, other than the fact of prior conviction, that increases the penalty for a crime beyond the prescribed statutory maximum must be submitted to a jury and proved beyond a reasonable doubt. *Apprendi*, 530 U.S. at 490. Claims under *Apprendi* are subject to harmless error review. *See Washington v. Recuenco*, 548 U.S. 212, 218–22 (2006).

### III.    ANALYSIS

On appeal, Rodriguez argues that the district court erred in denying his *Apprendi* claim because the state trial court could not have sentenced him to life imprisonment without finding that the victims' deaths were the direct result of his conduct. He contends that this "direct result" finding involves a higher degree of causation than his conviction required, and therefore, that his conviction for the substantive offenses did not automatically satisfy the sentencing enhancement. Rodriguez acknowledges that, in *Sims v. State*, 998 So. 2d 494 (Fla. 2008), the Florida Supreme Court stated that conviction for an offense which includes causing death as an element would satisfy the "direct result" requirement, but Rodriguez argues that the Florida Supreme Court did not adopt a *per se*

rule and instead employed a fact specific analysis. Rodriguez argues that, in his case, the evidence at trial established that the victims died from a crash but did not distinguish the crash that he caused from a crash caused by his co-defendant. Thus, he argues, it cannot be determined from the jury's general verdict which crash they concluded was the cause of the deaths. Lastly, Rodriguez argues that the error is not harmless because a jury could have found that the accident caused by his co-defendant resulted in the victims' deaths.

Under Florida law, someone who "causes or contributes to causing" a death while driving with more than a .08 BAC is guilty of DUI manslaughter. Fla. Stat. § 316.193(1)(b)–(c), 3(a)–(b), (c)3.a. Generally, the statutory maximum sentence is 15 years' imprisonment. Fla. Stat. § 775.082(3)(c) (2002).[2] However, trial courts must determine the "lowest permissible sentence" based on Florida's Criminal Punishment Code and "[i]f the lowest permissible sentence under the code exceeds the statutory maximum sentence . . . the sentence required by the code must be imposed." *Id.* § 921.0024(2). Under the code, "[i]f the total sentence points are greater than or equal to 363, the court may sentence the offender to life imprisonment." *Id.*

Points are calculated in accord with Florida's Criminal Punishment Code Worksheet. *Id.* § 921.0024(1)(a). First, points are assessed for the "Primary Offense," which is the most serious offense

---

[2] This is substantively identical with the current statute but has been renumbered. *See* Fla. Stat. § 775.082(3)(d).

and of which there can only be one.  *Id.* §§ 921.0024(1)(a), 921.0021(1), (4).  For a level 8 offense, like DUI manslaughter, that yields 74 points.  *Id.* §§ 921.0021(1), (4), 921.0024(1)(a).  Next, points are added for secondary offenses.  *Id.* § 921.0024(1)(a).  For level 8 offenses, that yields 37 points per offense.  *Id.*  Points are then added for victim injury, with death, aside from murder, yielding 120 points per death.  *Id.*  Further modifiers are subsequently applied.  *Id.*

Victim injury points are not properly assessed unless the injury was a "direct result" of the offense.  *Id.* § 921.0021(7)(a).  In *Sims*, the Florida Supreme Court held that the "direct result" language required "that a causal connection must clearly exist between the charged offense and the death of the victim."  998 So. 2d at 506.  The court went on to explain that "Sims was not charged with vehicular homicide or any other offense in which the crime actually involved the impact that caused the death.  A conviction under that different circumstance would have satisfied the causation requirement for the imposition of victim-injury points."  *Id.*  Because Sims was instead convicted of leaving the scene of an accident resulting in death, the court instead concluded that Sims was not on the hook for victim injury points because evidence established that the death occurred before the crime, which was merely leaving the scene.  *Id.* at 506–07.

Here, we conclude that the district court did not err.  Because there is no indication that the summary denial of Rodriguez's *Apprendi* claim on direct appeal was not on the merits, we presume

it was denied on the merits. *Harrington*, 562 U.S. at 99. Because no explanation was given, we must determine if there was any reasonable basis for the state trial court's sentence. *Id.* at 98.

The state trial court's sentence would be contrary to *Apprendi* if it sentenced Rodriguez over the statutory maximum based on facts not found by a jury beyond a reasonable doubt. 28 U.S.C. § 2254(d)(1); *Apprendi*, 530 U.S. at 490. The ordinary statutory maximum for DUI manslaughter is 15 years' imprisonment. Fla. Stat. §§ 316.193(3)(c)3.a., 775.082(3)(d). Thus, Rodriguez's life sentences were above the ordinary statutory maximum.

Though the state trial court did not explain its reasoning, its decision is fairly straightforward. The ordinary statutory maximum is superseded by higher results produced under the Criminal Punishment Code. Fla. Stat. § 921.0024(2). If a defendant receives at least 363 sentence points, they may be sentenced to life imprisonment under the Criminal Punishment Code. *Id.* Because Rodriguez was sentenced to life in prison, the state trial court apparently determined that he had more than 363 sentence points. While it is not entirely clear from the record, it appears that Rodriguez's sentence points were generally calculated as follows: 74 points for the primary DUI Manslaughter offense; 148 points for the four secondary DUI Manslaughter offenses, at 37 points per instance; and 600 points for the five victims' deaths that he caused, at 120 points per

instance. Fla. Stat. §§ 921.0021(1), (4), 921.0024(1)(a). The sentence point total was 824.8.[3]

If Rodriguez had not received 600 sentence points for the victims' deaths, he would not have exceeded the 363-point threshold which was required for the enhancement. Therefore, the state trial court's sentence would be "contrary to" *Apprendi* if the jury had not found the facts necessary to assess him the 600 points for the victims' deaths. 28 U.S.C. § 2254(d)(1); *Apprendi*, 530 U.S. at 490. For Rodriguez to have been properly assessed those points under Florida law, the victims' deaths must have been the "direct result" of his offenses. Fla. Stat. § 921.0021(7)(a). The Florida Supreme Court has specifically stated that conviction of an offense "in which the crime actually involved the impact that caused the death" would "satisf[y] the causation requirement for the imposition of victim-injury points." *Sims*, 998 So. 2d at 506. The jury here convicted Rodriguez of DUI manslaughter, which, based on the statutory elements and the jury instructions, required it to find that he "caused or contributed to the cause of the [victims'] deaths." Fla. Stat. § 316.193(3)(c)3.a.

---

[3] The point total should have amounted to 822. It is unclear from the record where the remaining 2.8 points originated, but even if they were assessed in violation of *Apprendi*, they are harmless because the remaining 822 points were properly assessed, and the remaining points sufficiently justify Rodriguez's sentence under Florida law. Fla. Stat. § 921.0024(2); *Recuenco*, 548 U.S. at 218–22.

Thus, the jury found the necessary facts to satisfy the causation requirement for Rodriguez's sentence point total to exceed 363. As such, the state trial court's sentence was not contrary to *Apprendi* because the facts underlying the enhancement were found by the jury. 28 U.S.C. § 2254(d)(1); *Apprendi*, 530 U.S. at 490. Accordingly, we conclude that the district court did not err in denying Rodriguez's petition on this ground.

## IV.  CONCLUSION

For these reasons, we affirm the district court's order denying Rodriguez's habeas petition.

**AFFIRMED.**