# DISTRICT COURT OF APPEAL OF FLORIDA
## SECOND DISTRICT

———————————————

DAVID CHING-CHENG CHANG,

Appellant,

v.

STATE OF FLORIDA,

Appellee.

No. 2D2023-2090

———————————————

May 14, 2025

Appeal from the Circuit Court for Sarasota County; Donna M. Padar, Judge.

Andrea Flynn Mogensen of Law Office of Andrea Flynn Mogensen, P.A., Sarasota, for Appellant.

James Uthmeier, Attorney General, Tallahassee, and Natalia Reyna-Pimiento, Assistant Attorney General, Tampa, for Appellee.

MORRIS, Judge.

David Ching-Cheng Chang appeals his sentences for leaving the scene of an accident involving death and tampering with evidence (alteration of a vehicle). Chang entered a no contest plea to the charges but challenged the assessment of 120 victim injury points in the trial court's calculation of his sentences. Ultimately, the trial court determined that the victim injury points were properly assessed. On

appeal, Chang raises two facial constitutional challenges to section 921.0021(7)(e), Florida Statutes (2022).  He also challenges the sufficiency of the evidence related to the cause of the underlying accident, and he contends that the trial court fundamentally erred by relying on impermissible sentencing factors.  For the reasons explained herein, we affirm.

BACKGROUND

The facts of this case are tragic.  In August 2022, a young girl crossed the street on her bicycle into Chang's path.  Chang failed to stop and hit the girl.  Chang did not stop after the accident, and as Chang drove away, several witnesses took pictures of the damage to his vehicle.  Chang ultimately took his vehicle to an auto body shop to get the vehicle fixed.  Chang told an employee of the body shop that a tree had fallen on his vehicle and caused the damage.  Chang left his vehicle at the body shop and went home.

Law enforcement officers obtained the photos of Chang's car from the witnesses along with Chang's tag number.  This led Florida Highway Patrol officers to go to Chang's home to interview him.  Chang admitted that he had been involved in the accident and admitted knowing that it likely caused serious injury or death.  He also admitted that he did not contact law enforcement or any first responders.  Chang further admitted that he took the vehicle to a body shop to have it repaired and that he told the body shop employees that the damage was caused by a fallen tree.  Chang denied that he was speeding or distracted at the time of the accident.  Chang told the officers that immediately after the accident, he parked his car and returned to the scene on foot where he observed paramedics taking care of the victim.  He further stated that he did not want to interrupt their efforts so he left the scene.  After the interview, he

2

was arrested for leaving the scene of an accident involving serious bodily injury and tampering with evidence. He posted bond and was released.

The victim died a few days later. After learning that Chang had left the state and moved to Arkansas, Florida Highway Patrol officers obtained a warrant for Chang to be charged with leaving the scene of an accident with death. Chang was taken into custody in Arkansas and extradited to Florida.

Chang was charged by information with leaving the scene of an accident with death in violation of section 316.027(2)(c), Florida Statutes (2022), and tampering with evidence in violation of section 918.13, Florida Statutes (2022). Chang pleaded no contest to the charges. During the plea colloquy, the trial court discussed Chang's Criminal Punishment Code (CPC) scoresheet, noting that the State was seeking to include 120 victim injury points for the victim's death. The assessment of the points would add approximately ten years to the sentence for the charge of leaving the scene of an accident with death. The trial court told Chang it was possible, but not certain, that the points would be assessed. Chang stated that he understood, and he agreed to move forward with the plea.

During the presentation of the factual basis for the plea, the State asserted that Chang caused the accident resulting in the death of the victim, that he failed to stop and render aid despite knowing that the accident that he had just caused had involved the serious injury or death of another person, that he thereafter fled the scene and took his vehicle to a body shop to have it repaired, and that he lied about the cause of the damage to his vehicle. The defense accepted the majority of the factual basis but did not agree with the statement that Chang caused the accident. Ultimately, Chang entered the plea, and the trial court

3

accepted it while noting that Chang objected to the relevant portion of the factual basis. Sentencing was deferred.

Chang filed a motion challenging the CPC scoresheet calculation due to its proposed inclusion of the 120 victim injury points. Chang argued that an evidentiary hearing was necessary to determine the issues of causation of the accident and whether the victim injury points should be assessed. He asserted that applying the victim injury points would constitute an "unreasonable and unconstitutional enhancement" of the sentence because it would be punishing him for a homicide offense for which he was not charged or convicted. He further argued that by including the victim injury points, the State was essentially being allowed to seek and obtain a sentence that would ordinarily be imposed for a homicide offense despite the fact that he had been charged and convicted of a nonhomicide offense. He contended that this allowed the State to avoid proving causation beyond a reasonable doubt. Thus he sought an evidentiary hearing to establish that he did not cause the accident and, therefore, that the victim injury points should not be assessed. The State filed a response, contending that the motion should be denied and that the sentencing should proceed.

Chang also filed a motion for downward departure, wherein he pointed out his lack of a criminal record, his prior clean driving record, and his service to his community. He argued that the imposition of the victim injury points would be unconscionable and unconstitutional because he would be punished as if he caused the victim's death despite the fact that his only crimes occurred after the accident. Chang asserted that if the trial court imposed the victim injury points, it should consider applying a downward departure based on Chang's "exemplary life of service to his fellow man." Chang maintained that his capacity to

4

appreciate the criminal nature of his conduct was "impaired" by the trauma of the accident and his resulting panic. He also asserted that the accident was an isolated incident committed in an unsophisticated manner, and he contended that he did not cause the accident and that there was no victim in the case. He argued that the victim injury points should not be assessed and that it would even be an injustice to sentence him to the statutory mandatory minimum sentence of forty-eight months in prison. Chang requested a downward departure sentence of thirty-six months of home confinement followed by five years of probation.

The State responded and asked that the motion for downward departure be denied.

At the sentencing hearing, a video of the accident was received into evidence. The State called a Florida Highway Patrol officer to testify about his investigation of the accident. The officer worked to determine the vehicle speed at the time of the accident; this was done by reenacting the accident with the help of another officer. The officers estimated that Chang's vehicle was traveling between forty-eight and fifty-one miles per hour at the time of the accident. The posted speed limit for the area was thirty miles an hour. The officer testified that there was no evidence that Chang applied the brakes at any time. There were no skid marks or antilock braking marks found at the scene, and video evidence of the accident did not reflect that brake lights were illuminated on Chang's vehicle.

During the officer's testimony, he was asked whether the victim had pushed a button to activate the beacon lights in the crosswalk, alerting drivers that a pedestrian or bicyclist was about to enter it. The officer testified that the victim did not activate the beacon, but the officer

5

also explained that such an action was not required by law. The officer disputed that the accident could have been avoided if the victim had activated the beacon and had not ridden into the crosswalk. The officer opined that the reason for the accident was Chang's failure to pay attention, which led to his inability to react when the victim entered the crosswalk. The officer noted that there was more than three hundred feet of visible viewing area, and he emphasized that there was no indication that Chang had slowed down. This led the officer to the conclusion that Chang was not paying attention.

The trial court also heard from various friends and family members of the victim regarding the impact that the accident had on their lives and the surrounding community. Some people asked for the trial court to make an example of Chang through the imposition of a harsher sentence, with at least two opining that Chang should have been charged with vehicular homicide. Several people also referred to Chang as being "reckless" or showing a "callous disregard" for the victim. The victim's mother asked the court to "send a message to the community" that Chang's behavior would not be tolerated.

Other witnesses testified in support of Chang's character. Chang also provided a statement on his behalf. He asserted that he did stop after the accident, saw that the victim was being tended to by paramedics, and then lost the courage to stay on scene because he was panicked, terrified, and confused. He stated it was the worst decision of his life. He asserted that he was honest with the Florida Highway Patrol officers when they came to his house because he wanted to act with integrity and not make any further mistakes. He argued that this was an accident, an isolated incident, and that he thought about the victim every day. He told the court that he was taking responsibility and that

6

he had a heavy heart full of regret and sadness. He acknowledged that he had failed everyone involved, but he asked for mercy so that he could take care of his aging wife.

The trial court noted that the imposition of 120 victim injury points was discretionary, and the trial court asked for the defense and the State to submit arguments in favor of or against the imposition of the victim injury points. The defense argued that Chang did not cause the accident and that, instead, the victim made a mistake by entering the crosswalk. The defense argued that Chang did not have time to react and that because Chang did not cause the accident, victim injury points should not be assessed. Rather, the defense asserted that the statutory minimum mandatory four-year sentence for leaving the scene of an accident with death was an appropriate punishment.

In contrast, the State argued that pursuant to section 921.0021(7)(e), the charge of leaving the scene of an accident with death permitted the assessment of victim injury points when the offender caused the victim injury. The State pointed out that the evidence reflected that Chang was speeding and was not paying attention when he entered the intersection. Thus, according to the State, Chang caused the victim's injury and ultimately her death. As a result, the State contended that the assessment of the victim injury points was proper.

Upon conclusion of the parties' arguments, the trial court set forth its findings. The trial court indicated that it had considered the impact that Chang's conduct had on the community as well as on the victim's family and friends. The trial court also noted the statements presented in support of Chang before opining that Chang had been tested by being involved in a fatal accident involving a child and that he failed the test repeatedly.

7

The trial court stated that it accepted the conclusions made by the investigating law enforcement officers. The trial court found that the evidence supported the argument that Chang had been speeding and not paying attention and that he never applied the brakes before the accident occurred. The trial court further noted that Chang did not immediately pull over to check on the victim and that even if he did go back to the scene as he claimed, he did not turn himself in to law enforcement or report that he was the person involved. The trial court also pointed to the damage to Chang's vehicle, noting the efforts that Chang took to conceal the cause and ultimately to have the vehicle repaired to "get[] rid of the evidence." The trial court further pointed out that Chang "went back to [his] family" and said nothing to them about the accident. The trial court concluded by stating, "These are all the things that I am taking into account in imposing the sentence."

Ultimately, the trial court denied Chang's motion for downward departure, concluding that this was not a case where a downward departure sentence would be appropriate. The trial court made an explicit finding that Chang "caused the crash in this case that led to [the victim's] death" and concluded that victim injury points should be assessed pursuant to section 921.0021(7)(e). On the charge of leaving the scene of an accident with death, Chang was sentenced to fifteen years in prison with credit for time served followed by three years of probation. On the charge of tampering with evidence, he was sentenced to five years in prison with credit for time served. The sentences were ordered to run concurrently. Court costs were also imposed.[1]

---

[1] After sentencing but prior to the filing of his notice of appeal, Chang filed a motion for mitigation or, alternatively, resentencing, wherein he first argued that the trial court should consider as "an

This appeal now follows.

ANALYSIS

**I.    Chang's facial constitutional challenges**

    **a. Section 921.0021(7)(e) is not facially unconstitutional as violative of the principle set forth in *Apprendi v. New Jersey*, 530 U.S. 466 (2000), and subsequent cases expanding upon that principle.**

"The constitutionality of a statute is a pure question of law subject to de novo review." *City of Fort Lauderdale v. Dhar*, 185 So. 3d 1232, 1234 (Fla. 2016) (citing *City of Miami v. McGrath*, 824 So. 2d 143, 146 (Fla. 2002)).  "As in all constitutional challenges, the statute [is] clothed with the presumption of correctness and all reasonable doubts about the statute's validity must be resolved in favor of constitutionality." *Id.*

_____

additional mitigating factor" that Chang desired to bring finality and closure to the matter.  Chang asked the trial court to impose the lowest permissible sentence as calculated on the CPC scoresheet (with a minimum mandatory of four years) for the charge of leaving the scene of an accident with death and to a concurrent five-year sentence for the tampering with evidence charge.  Chang noted that the sentence "would still take into account the 'death points' " and would not constitute a downward departure.  Chang then asserted that if the trial court did so, Chang "would be willing to withdraw and waive the previous Motion for Downward Departure" and he would "further agree to waive and not contest the assessment of the 'death points.' "  He contended that if his request for mitigation was granted, the necessity for an appeal would be eliminated.

Chang alternatively requested resentencing based on an argument the trial judge was too emotionally and personally connected to the case which potentially called her impartiality into question.  Chang also sought resentencing on the basis that the trial court granted an "upward departure" without providing reasons for doing so.  Chang suggested that if the trial court granted resentencing, it should "give consideration to voluntary recusal."  After receiving a response from the State, the trial court denied the motion, which occurred after Chang filed his notice of appeal.  Chang does not raise the issues made in the aforementioned motion in this appeal.

9

Section 921.0021(7)(a) defines "victim injury" as "the physical injury or death suffered by a person as a direct result of the primary offense, or any additional offense, for which an offender is convicted and which is pending before the court for sentencing at the time of the primary offense." *See also* Fla. R. Crim. P. 3.704(d)(9) (explaining that victim injury points are "scored for physical injury or death suffered by a person as a direct result of any offense pending before the court for sentencing"). Ordinarily then, victim injury points are only assessed where the victim's injury or death is the direct result of the offense for which an offender is convicted. An exception exists, however, in section 921.0021(7)(e) which provides that "[n]otwithstanding paragraph (a), if the conviction is for an offense described in s. 316.027 and the court finds that the offender caused victim injury, sentence points for victim injury may be assessed against the offender." Thus, in the limited circumstance addressed in section 921.0021(7)(e), the victim's injury or death need not be the "direct result" of the offense for which the offender is convicted.

Section 316.027, Florida Statutes (2022), relates to accidents involving serious injury or death. Chang was convicted of leaving the scene of an accident with death in violation of section 316.027(2)(c).

Quoting *Apprendi*, Chang argues that it is a constitutional requirement that "[o]ther than the fact of a prior conviction, any fact that increases the penalty for a crime beyond the prescribed statutory maximum must be submitted to a jury, and proved beyond a reasonable doubt." *Apprendi*, 530 U.S. at 490. Chang also cites to *Alleyne v. United States*, 570 U.S. 99 (2013), wherein the Supreme Court extended the *Apprendi* principle to mandatory minimum sentencing, explaining that facts which increase a mandatory minimum sentence "alter the

10

prescribed range of sentences to which a defendant is exposed and do so in a manner that aggravates the punishment." *Alleyne*, 570 U.S. at 108 (citing *Apprendi*, 530 U.S. at 483 n.10). The Supreme Court further explained that "criminal statutes have long specified both the floor and ceiling of sentence ranges, which is evidence that both define the legally prescribed penalty." *Id.* at 112. The Supreme Court thus held that "[f]acts that increase the mandatory minimum sentence are therefore elements [of the offense] and must be submitted to the jury and found beyond a reasonable doubt." *Id.* at 108. In his reply brief, Chang further cites to *Erlinger v. State*, 602 U.S. 821 (2024), which was decided during the pendency of this appeal. There, the Supreme Court emphasized that "[v]irtually 'any fact' that 'increase[s] the prescribed range of penalties to which a criminal defendant is exposed' must be resolved by a unanimous jury beyond a reasonable doubt (or freely admitted in a guilty plea)." *Id.* at 834 (second alteration in original) (quoting *Apprendi*, 530 U.S. at 490).[2]

Chang argues that section 921.0021(7)(e) violates the *Apprendi* principle. He asserts that without the addition of the victim injury points, the charge of leaving the scene of an accident with death scored only 58.4 points on the scoresheet which would have subjected him to a lowest permissible sentence of 22.8 months in prison, but that with the 120 victim injury points added, his lowest permissible sentence increased to 112.8 months in prison. Thus in relation to the charge of

---

[2] Because *Apprendi* first established the principle that any "facts that increase the prescribed range of penalties to which a criminal defendant is exposed" are elements of the crime and thus must be presented to a jury and proved beyond a reasonable doubt, 530 U.S. at 489-90, we will refer to it as the "*Apprendi* principle" for ease of reference.

leaving the scene of an accident with death, Chang is challenging the increase in the minimum sentence that could have been imposed absent a downward departure, i.e., the floor of the sentencing range. For the charge of tampering with evidence, Chang contends that with the addition of the 120 victim injury points, the maximum sentence increased from five years to 9.4 years.[3] Thus for that offense, he is challenging the maximum sentence that could have been imposed, i.e., the ceiling of the sentencing range.

Rather than challenging section 921.0021(7)(e) as applied to him, Chang contends that it is facially unconstitutional because it permits a trial court to make a finding that is not presented to a jury that can increase the range of penalties to which an offender is exposed. "[A]n as-applied challenge . . . is an argument that a law which is constitutional on its face is nonetheless unconstitutional as applied to a particular case or party, because of its discriminatory effects . . . ." *Hall v. State*, 319 So. 3d 691, 693 (Fla. 3d DCA 2021) (quoting *Miles v. City of Edgewater Police Dep't/Preferred Governmental Claims Sols.*, 190 So. 3d 171, 178 (Fla. 1st DCA 2016)). In contrast,

> [a] facial challenge to a statute is more difficult than an "as applied" challenge, because the challenger must establish that no set of circumstances exists under which the statute would be valid. Except in a First Amendment challenge, the fact that the act might operate unconstitutionally in some hypothetical circumstance is insufficient to render it unconstitutional on its face; such a challenge must fail unless

---

[3] The lowest permissible sentence for the charge of tampering with evidence exceeded the statutory maximum sentence, and consequently, the lowest permissible sentence replaced the statutory maximum sentence. *See* Fla. R. Crim. P. 3.704(26) (explaining that if the lowest permissible sentence under the CPC exceeds the statutory maximum, the lowest permissible sentence replaces the statutory maximum for that offense).

12

no set of circumstances exists in which the statute can be constitutionally applied. A facial challenge considers only the text of the statute, not its application to a particular set of circumstances, and the challenger must demonstrate that the statute's provisions pose a present total and fatal conflict with applicable constitutional standards.

*Cashatt v. State*, 873 So. 2d 430, 434 (Fla. 1st DCA 2004).

We decline the State's request to find this facial constitutional challenge unpreserved.[4] However, on the merits, the argument fails.

---

[4] The State maintains that Chang did not raise this specific constitutional challenge below or in a motion to correct sentencing error pursuant to Florida Rule of Criminal Procedure 3.800(b). While it is true that Chang did not argue that the statute was facially unconstitutional as violative of the *Apprendi* principle below or in a rule 3.800(b) motion, we conclude that he is not precluded from raising this issue for the first time on appeal because at the time of filing his initial brief, no prior appellate court had deemed section 921.0021(7)(e) to be unconstitutional. *Cf. Harvey v. State*, 848 So. 2d 1060, 1063-64 (Fla. 2003) (permitting appellant to raise facial constitutional challenge for the first time on appeal because at the time of the filing of the initial brief, there was no case law holding that the challenged statute was unconstitutional); *see also Brannon v. State*, 850 So. 2d 452, 458 (Fla. 2003) (explaining that the exception to the general rule of preservation permitted in *Harvey* applied "only to a facial challenge to the constitutionality of a sentencing statute that, at the time the first appellate brief is filed in the case, has not been declared unconstitutional in any appellate decision binding on the trial court"); *Gordon v. State*, 139 So. 3d 958, 960 (Fla. 2d DCA 2014) (relying on *Brannon* and explaining that an appellant who would normally be required to raise a fundamental sentencing error in a rule 3.800(b) motion is not required to do so when he raises a facial constitutional challenge to a statute where "no appellate court has already addressed the issue"). Chang is, however, precluded from arguing that section 921.0021(7)(e) was unconstitutionally applied to his case in violation of the *Apprendi* principle because he did not raise this particular argument below, and he cannot raise an as-applied challenge for the first time on appeal. *See Tyler v. State*, 69 So. 3d 961, 964 (Fla. 2d DCA 2011) (citing *Trushin v. State*, 425 So. 2d 1126, 1129-30 (Fla. 1982), for the proposition that an

13

The State correctly notes that in this case, the application of the victim injury points to the charge of leaving the scene of an accident with death does not increase the statutory maximum sentence to which Chang was exposed. "[T]he 'statutory maximum' for *Apprendi* purposes is the maximum sentence a judge may impose *solely on the basis of the facts reflected in the jury verdict or admitted by the defendant*." *Blakely v. Washington*, 542 U.S. 296, 303 (2004). "In other words, the relevant 'statutory maximum' is not the maximum sentence a judge may impose after finding additional facts, but the maximum he may impose *without* any additional findings." *Id.* at 303-04. The offense of leaving the scene of an accident with death is a first-degree felony punishable by a four-year mandatory minimum term of imprisonment and up to thirty years in prison. §§ 316.027(2)(c); 775.082(3)(b), Fla. Stat. (2022). Thus a trial court may impose a sentence of up to thirty years in prison without making any additional findings. Consequently, because the application of the victim injury points does not increase the maximum sentence to which Chang was exposed on that charge, no *Apprendi* violation occurred on that end of the sentencing range.[5]

Of course, this does not end the analysis because it does not address the issue of the increase in Chang's lowest permissible sentence for the charge of leaving the scene of an accident with death. Where a fact increases the range of penalties to which an offender is exposed, that

---

as-applied challenge must be raised below); *see also Enriguez v. State*, 858 So. 2d 338, 341 (Fla. 2d DCA 2003).

[5] Hypothetically, in a case where a defendant left the scene of an accident involving the death of several people, the addition of victim injury points for each victim could cause the lowest permissible sentence to exceed the statutory maximum, which would implicate *Apprendi*. *See* Fla. R. Crim. P. 3.704(26).

fact must be submitted to a jury and resolved beyond a reasonable doubt. *See Erlinger*, 602 U.S. at 834; *Apprendi*, 530 U.S. at 490. The State concedes that the addition of the victim injury points potentially increases the lowest permissible sentence here, but the State asserts that the lowest permissible sentence under the CPC is not the same thing as a statutory mandatory minimum sentence. We acknowledge that the Supreme Court has referred to *statutory* maximum and *statutory* mandatory minimum sentences in the *Apprendi* line of cases, *see, e.g.*, *Erlinger*, 602 U.S. at 825, 833-34; *Alleyne*, 570 U.S. at 111-17; *Apprendi*, 530 U.S. at 490, and has stressed that no constitutional violation occurs where a trial court exercises its discretion "informed by judicial factfinding" to impose a sentence within the range prescribed by statute, *Alleyne*, 570 U.S. at 116.

However, in both *Blakely* and *United States v. Booker*, 543 U.S. 220 (2005), the Supreme Court extended the *Apprendi* principle to sentences rendered under state and federal sentencing guidelines. *Blakely*, 542 U.S. at 301-05 (applying *Apprendi* principle to sentence imposed under state sentencing guidelines); *Booker*, 543 U.S. at 226-27, 244 (applying *Apprendi* principle to sentence imposed under federal sentencing guidelines). In *Booker*, the Supreme Court noted that its reference to the "statutory maximum" in *Apprendi* was based on the facts of that case, which only involved a statutory sentencing scheme. *Booker*, 543 U.S. at 238. The Supreme Court emphasized that it was not the term used in *Apprendi* that was of paramount importance; rather, it was "the principles we sought to vindicate." *Id.* Extending the *Apprendi* principle to the federal sentencing guidelines, the Supreme Court explained that "[r]egardless of whether the legal basis of the accusation is in a statute or

15

in guidelines . . . , the principles behind the jury trial right are equally applicable." *Id.* at 239.

Though this case involves a sentence imposed pursuant to a state sentencing code, rather than sentencing guidelines, we question whether that distinction would result in a different outcome where a trial court applies a sentencing enhancement based on a judicially determined fact that increases a minimum sentence which is required to be imposed absent special circumstances. We are hesitant to conclude that a trial court's ability to downwardly depart when special circumstances are present automatically insulates cases involving an increase of the lowest permissible sentence under the CPC from scrutiny pursuant to the *Apprendi* principle. As noted in *Booker,* "[t]he availability of a departure in specified circumstances does not avoid the constitutional issue." 543 U.S. at 234. Offenders do not have a right to a downward departure. There must be a legally recognized ground for departure, and the trial court must determine that departure is appropriate. *See Geske v. State,* 378 So. 3d 1199, 1204 (Fla. 2d DCA 2023) (relying on *Barnhill v. State,* 140 So. 3d 1055, 1060 (Fla. 2d DCA 2014)). Absent those circumstances, an offender in a case such as this one would still face an increased lowest permissible sentence that is required to be imposed pursuant to the CPC. *See Jackson v. State,* 64 So. 3d 90, 92 (Fla. 2011) (explaining that trial courts "must impose, at a minimum, the lowest permissible sentence calculated according to the CPC unless there is a valid reason to impose a downward departure sentence"); *cf. Booker,* 543 U.S. at 234 (noting that if a departure sentence is not legally permissible "the judge is bound to impose a sentence within the Guidelines range"). There is at least an argument that such facts could potentially implicate

16

the *Apprendi* principle, though we need not ultimately decide that issue to resolve this case, and this opinion should not be construed as such.

We do not overlook *Bean v. State*, 264 So. 3d 947, 951 (Fla. 4th DCA 2019), wherein the court opined that "[t]he scoring of victim injury points establishes the lowest permissible sentence pursuant to the [CPC] but it is not a fact which increases a mandatory minimum sentence." However, *Bean* is distinguishable from this case because there, the appellant pleaded guilty, acknowledged and accepted that the lowest permissible sentence included the victim injury points, and admitted the factual basis for his plea including the fact of the victim's injury. *See id.* at 950-51. Notably, the court in *Bean* concluded that because the "appellant ple[aded] guilty and accepted the lowest permissible sentence in his plea agreement, calculated using victim injury points, he accepted the judicial factfinding involved in his sentence." *Id.* at 951 (relying on *Blakely*, 542 U.S. at 310, for the proposition that where an offender pleads guilty, "the State is free to seek judicial sentence enhancements so long as the defendant either stipulates to the relevant facts or consents to judicial factfinding"). The facts of *Bean* then are not in contravention of the *Apprendi* principle because while the fact of victim injury increased the range of penalties that the appellant was exposed to, the appellant freely admitted it in his plea. Under those circumstances, there is no *Apprendi* violation. *See Blakely*, 542 U.S. at 310; *see also Bailes v. State*, 382 So. 3d 1, 5 (Fla. 4th DCA 2024) (concluding that appellant waived any challenge to the inclusion of victim injury points where defense counsel stated there was no objection to the scoresheet and citing *Bean* for the proposition that no jury finding was required on that issue).

17

The facts of this case are different. While Chang entered a no contest plea, he did not accept judicial factfinding of victim injury. Quite the opposite, Chang challenged the inclusion of victim injury points, arguing that he did not cause the victim's injury. The trial court accepted the factual basis for the plea but noted Chang's objection to the inclusion of the victim injury points. Chang also filed a motion challenging the scoresheet based on the inclusion of the victim injury points and a motion for downward departure wherein he again argued that he did not cause the victim's injury. Consequently, *Bean* does not control this case.

Ultimately, however, the issue is not whether the application of victim injury points pursuant to section 921.0021(7)(e) to Chang's case is violative of the *Apprendi* principle. The issue is whether section 921.0021(7)(e) is facially unconstitutional as violative of the *Apprendi* principle. Assuming without deciding that in a case such as this, the *Apprendi* principle is violated by a trial court's application of victim injury points pursuant to section 921.0021(7)(e) resulting in an increased lowest permissible sentence under the CPC, Chang's argument fails precisely because there *are* circumstances when it could be constitutionally applied. For example, the State could assert in an information—and a jury could conclude in its verdict—that an offender caused a person's death in the accident that preceded the offender leaving the scene. The trial court's subsequent finding during sentencing that the defendant caused a victim injury for purposes of applying victim injury points pursuant to section 921.0021(7)(e) would not violate the *Apprendi* principle because it was a fact already determined by a jury. And *Bean* reflects another possibility: where an offender admits the fact of causation of victim injury in entering a plea or at least agrees to the

18

inclusion of victim injury points on his or her scoresheet, a sentence that includes victim injury points would not violate the *Apprendi* principle. *See also Blakely*, 542 U.S. at 310; *Bailes*, 382 So. 3d at 5.

As previously discussed herein, in order for a statute to be deemed facially unconstitutional, there must be "no set of circumstances . . . under which the statute would be valid"; the fact that a statute might operate unconstitutionally in some circumstances is not sufficient. *Cashatt*, 873 So. 2d at 434; *see also Fla. Dep't of Revenue v. City of Gainesville*, 918 So. 2d 250, 256 (Fla. 2005); *Tyler v. State*, 69 So. 3d 961, 964 (Fla. 2d DCA 2011). Accordingly, because there are circumstances in which section 921.0021(7)(e) could be applied without violating the *Apprendi* principle, Chang's facial constitutional challenge on this point is without merit.

For the same reason, it is unnecessary for us to address whether the increase in the maximum sentence Chang was exposed to on the charge of tampering with evidence is violative of the *Apprendi* principle.

### b. Section 921.0021(7)(e) does not violate substantive due process thereby rendering it facially unconstitutional.

The second basis for Chang's facial constitutional challenge is based on a purported substantive due process violation. Specifically, Chang argues that section 921.0021(7)(e) punishes a person for the accident preceding the actual offense charged: leaving the scene of an accident with death. And he asserts that the application of victim injury points based solely on the determination that the offender caused victim injury fails to take into account whether the accident was unavoidable and unpredictable or whether the person charged exhibited recklessness, indifference, culpability, or responsibility. Citing the staff analysis for the house bill which ultimately led to the enactment of section 921.0021(7)(e), Chang questions how the addition of victim injury points

19

for a death not caused by the offense charged serves the stated legislative purpose of promoting personal responsibility, and he contends that the statute is not rationally related to a legitimate use of police power.

He further argues that substantive due process is violated because the application of victim injury points operates as a form of strict liability, punishing a person for something despite the lack of any conscious intent. Chang relies on *Sims v. State*, 998 So. 2d 494 (Fla. 2008), a case that preceded the enactment of section 921.0021(7)(e) but which involved the application of victim injury points in a case involving a charge of leaving the scene of an accident with death. He notes that there, the Florida Supreme Court held that pursuant to section 921.0021(7)(a), victim injury points were only properly applied where a victim's injury or death was the direct result of the primary offense. *Sims*, 998 So. 2d at 505-06. While Chang concedes that section 921.0021(7)(e) now provides an exception to section 921.0021(7)(a), he argues that *Sims* serves to support his argument that there is no rational relationship between section 921.0021(7)(e) and the stated legislative purpose of promoting personal responsibility because the victim's death is not the direct result of the subsequent offense of leaving the scene of an accident with death.

Chang also argues that without statutory guidance as to when victim injury points should be added, victim injury points could be applied in an unreasonable, arbitrary, and capricious manner. Lastly, he asserts that because trial courts have discretion to apply victim injury points where there is no statutory definition of "caused," the statute is impermissibly vague, resulting in another substantive due process violation.

Like the *Apprendi* facial constitutional challenge, the State argues that Chang failed to preserve this argument. We decline to find the facial constitutional challenge portion of Chang's argument procedurally barred.[6] However, we conclude that there is no merit to Chang's substantive due process challenge.

"Substantive due process protects fundamental rights that are so 'implicit in the concept of ordered liberty [that] neither liberty nor justice would exist if they were sacrificed.' " *Jackson v. State*, 191 So. 3d 423, 428 (Fla. 2016) (quoting *Palko v. Connecticut*, 302 U.S. 319, 325-26 (1937), *overruled on other grounds by Benton v. Maryland*, 395 U.S. 784 (1969)). "Analyzing a substantive due process claim begins with a 'careful description of the asserted right.' " *Id.* (quoting *Reno v. Flores*, 507 U.S. 292, 302 (1993)). "Under substantive due process, the test 'is whether the statute bears a rational relation to a permissible legislative objective that is not discriminatory, arbitrary, capricious, or oppressive.'" *Id.* (quoting *Lasky v. State Farm Ins. Co.*, 296 So. 2d 9, 15 (Fla. 1974)).

> Courts will not be concerned with whether the particular legislation in question is the most prudent choice . . . to . . .

---

[6] In Chang's motion challenging the CPC scoresheet calculation and in his motion for downward departure, Chang asserted that the actual crime to which he entered a plea occurred *after* the accident, which is similar to one of the arguments he makes on appeal. Though he did not specifically refer to "substantive due process," argue that the statute could be applied in an unreasonable, arbitrary, and capricious manner, or argue that the statute was unconstitutionally vague, he did assert that the application of the victim injury points would constitute an "unreasonable and unconstitutional enhancement." Even if this issue was not sufficiently raised below, Chang is entitled to raise it for the first time on appeal because at the time of filing his initial brief, no prior appellate court had deemed section 921.0021(7)(e) to be unconstitutional. *Cf. Harvey v. State*, 848 So. 2d 1060, 1063-64 (Fla. 2003); *see also Brannon v. State*, 850 So. 2d 452, 458 (Fla. 2003); *Gordon v. State*, 139 So. 3d 958, 960 (Fla. 2d DCA 2014).

21

> achieve the interest intended. If there is a legitimate state interest that the legislation aims to effect, and if the legislation is a reasonably related means to achieve the intended end, it will be upheld.

*Id.* (citing *State v. Walker*, 444 So. 2d 1137, 1138-39 (Fla. 2d DCA 1984)).

While enhanced sentences based on noncriminal acts have been deemed to constitute a substantive due process violation, *see State v. O.C.*, 748 So. 2d 945, 949-50 (Fla. 1999); *Schmitt v. State*, 590 So. 2d 404, 413 (Fla. 1991) ("[A] due process violation occurs if a criminal statute's means is not rationally related to its purposes and, as a result, it criminalizes innocuous conduct." (citing art. I, § 9, Fla. Const.)), section 921.0021(7)(e) does not penalize an offender for innocent conduct. As a result, it does not violate substantive due process.

Within the definition of the crime of leaving the scene of an accident with death, section 316.027 incorporates the duty of a driver of a vehicle involved in an accident to stop and provide information and to render aid to anyone injured, as provided in section 316.062. In the house bill analysis that preceded the enactment of section 921.0021(7)(e), it was noted that section 316.027 does not require that an offender caused the accident; rather, the crime is committed when an offender willfully leaves the scene without complying with section 316.062. FL H.R. Safety & Sec. Council, HB 25 (2007) Staff Analysis (Apr. 11, 2007), *available on Westlaw at* FL Staff An., H.B. 25, 4/11/2007. The analysis further explains that section 921.0021(7)(e) was intended to authorize victim injury points when a driver leaves the scene of an accident involving death or injury, thereby significantly increasing the lowest permissible sentence for the offense. *Id.* The addition of section 921.0021(7)(e), then, ties directly into the stated legislative purpose: to promote personal responsibility by increasing the

22

severity of the sanction for injurious behavior. Indeed, the legislative history clearly suggests that the statute was intended to encourage drivers to comply with section 316.062 by staying on scene, providing their information, and rendering aid whenever they are involved in an accident involving death or injury by subjecting them to a possible higher punishment if they fail to do so.

Section 921.0021(7)(e) provides a trial court discretion to enhance a sentence for an offender who has left the scene of an accident with death—which is a crime itself—where the trial court determines that the offender caused the victim injury. The fact that the victim's death was not caused by the act of leaving the scene does not mean that the statute is not rationally related to the stated legislative purpose. An offender who leaves the scene of an accident may not have intent to harm the victim or exhibit recklessness prior to the accident, but the offender, at the very least, has intent and reckless indifference immediately following the accident, at a time where it may be possible in some instances to render lifesaving aid to a victim of the accident. The stated legislative purpose of the statute is to promote personal responsibility which, in turn, would hopefully result in fewer instances of people leaving the scene of an accident with injury or death. Section 921.0021(7)(e) effectuates that purpose by permitting an enhanced punishment where an offender fails to do so.

Turning to Chang's vagueness challenge, we note that because it does not involve the First Amendment, this portion of the argument must be construed on an as-applied basis. *See State v. Barnes*, 686 So. 2d 633, 636 (Fla. 2d DCA 1996) (explaining that a vagueness challenge which did not involve the First Amendment had to be reviewed on the facts of the case and on an as-applied basis); *see also United States v.*

23

*Mazurie*, 419 U.S. 544, 551 (1975). But Chang did not raise this issue below, and thus he is procedurally barred from raising it for the first time on appeal. *See Tyler*, 69 So. 3d at 964 (citing *Trushin v.* State, 425 So. 2d 1126, 1129-30 (Fla. 1982), for the proposition that an as-applied challenge must be raised below); *see also Enriguez v. State*, 858 So. 2d 338, 341 (Fla. 2d DCA 2003).

Yet even on the merits, Chang's vagueness argument fails. "When a person has received fair warning from a criminal statute that certain conduct is prohibited, that person may not attack the vagueness of a statute simply because it does not give 'similar fair warning with respect to other conduct which might be within its broad and literal ambit.' " *Barnes*, 686 So. 2d at 636-37 (quoting *Parker v. Levy*, 417 U.S. 733, 756 (1974)). "[O]ne to whose conduct a statute clearly applies may not successfully challenge it for vagueness." *Id.* at 637 (quoting *Parker*, 417 U.S. at 756). Furthermore, the fact that the legislature could have used more precise language does not render the statute vague, nor does the legislature's failure to define a statutory term in and of itself render a statute unconstitutionally vague. *Id.*; *see also Cashatt*, 873 So. 2d at 435 ("[I]mprecise language does not render a statute fatally vague, so long as the language 'conveys sufficiently definite warning as to the proscribed conduct when measured by common understanding and practices.' " (quoting *People v. Foley*, 731 N.E.2d 123, 130 (N.Y. 2000))). "Finally, a defendant who establishes only that the statute is vague in the sense that it requires a person to conform his or her conduct to an imprecise but comprehensible standard cannot prevail on a vagueness challenge." *Barnes*, 686 So. 2d at 637 (citing *Village of Hoffman Estates v. Flipside, Hoffman Ests., Inc.*, 455 U.S. 489, 495 n.7 (1982)).

24

Section 921.0021(7)(e) is not vague. It clearly provides that if a person is convicted of violating section 316.027 and the trial court finds that they caused injury to a victim, the trial court may impose victim injury points. The fact that the word "caused" is not defined is of no consequence as that term is easily definable and understood. Any person who is convicted of violating section 316.027 is on notice that victim injury points may be imposed where the trial court finds that they caused the victim injury.

Accordingly, we conclude that section 921.0021(7)(e) does not violate substantive due process and is not facially unconstitutional on that basis.

## II.     Sufficiency of the evidence related to causation

Chang next challenges the sufficiency of the evidence related to causation of the accident. He asserts that the State failed to prove that he caused the accident beyond a reasonable doubt. He maintains that the video and testimonial evidence reflect that it was an unavoidable accident, that the victim did not push the button to activate pedestrian safety lights, that the victim did not slow down, and that the victim entered the intersection despite the fact that her view was blocked. Chang also relies on witness testimony that the victim "appeared out of nowhere," and he contends that his view of the crosswalk was blocked until the very last moment. Thus he argues that his speed and level of attentiveness would not have prevented the accident, and he asserts that the application of the 120 victim injury points was therefore erroneous.[7] We find no merit to this argument.

---

[7] We note that Chang made a one-sentence conclusory statement that "[t]he trial court also erred in clearly applying an incorrect but undisclosed lower standard of proof." However, he does not elaborate

"[T]he decision of a trial court to impose victim-injury [sic] points is subject to an abuse-of-discretion standard." *Manhard v. State*, 282 So. 3d 941, 948 (Fla. 1st DCA 2019) (alteration in original) (quoting *Sims*, 998 So. 2d at 504). If there is competent, substantial evidence in the record to support the findings that victim injury points are appropriate, we will affirm. *Hall v. State*, 598 So. 2d 230, 231 (Fla. 2d DCA 1992) (concluding that because there was evidence in the record to support the imposition of victim injury points, there was no error in adding them). *But cf. Costello v. State*, 330 So. 3d 1052, 1053, 1053 n.1 (Fla. 2d DCA 2021) (explaining that there was no information in the record regarding the victim's cause of death and that this court was "unable to determine whether assessment of victim injury points would have been appropriate pursuant to section 921.0021(7)(e)").

Here, the State presented competent, substantial evidence to support the application of the 120 victim injury points. The State's evidence consisted of testimony about speed reenactments, the view that Chang had, the amount of time Chang would have had to stop if he had been attentive, and the fact that no skid marks existed on the road which supported the argument that he did not attempt to stop. The State also presented testimony by an investigating law enforcement officer that he

---

further, nor does he cite to the record before this court or to any legal authority to support this assertion. Consequently, we will not address it. *See Polyglycoat Corp. v. Hirsch Distribs., Inc.*, 442 So. 2d 958, 960 (Fla. 4th DCA 1983) ("This Court will not depart from its dispassionate role and become an advocate by second guessing counsel and advancing for him theories and defenses which counsel either intentionally or unintentionally has chosen not to mention. . . . When points, positions, facts[,] and supporting authorities are omitted from the brief, a court is entitled to believe that such are waived, abandoned or deemed by counsel to be unworthy.").

believed Chang was not paying attention and that he was not operating his vehicle in a careful and prudent manner. Section 921.0021(7)(e) does not require a determination of fault for the accident; it requires that a trial court find that the offender caused a victim injury. The trial court here concluded that based on the evidence, Chang caused injury to the victim, and the record evidence supports this finding.[8]

### III. Fundamental error related to sentencing considerations

Lastly, Chang argues that the trial court based the sentence on the fact that the victim died, rather than the actual crime of leaving the scene of an accident with death. He cites to the State's victim impact evidence, and he contends that the trial court essentially found that he committed the uncharged crime of vehicular homicide, something which several witnesses urged the court to do. He also contends that the trial court made a finding that Chang was reckless, a fact that Chang maintains was not supported by fact and not proven beyond a reasonable doubt. He argues that the State encouraged the trial court to consider conduct that the State elected not to charge, resulting in fundamental error. On that basis, he contends that the record reflects that the trial court may have relied on impermissible sentencing factors and that, as a result, the State had the burden to show from the record as a whole that the trial court did not rely on such considerations.

The issue of whether a trial court committed fundamental error by considering improper sentencing factors is a pure question of law subject to de novo review. *State v. Garcia*, 346 So. 3d 581, 585 (Fla. 2022) (citing

---

[8] Even if the evidence had been insufficient to support the application of the victim injury points, we conclude that any error would have been harmless because the record conclusively shows that the trial court could have and would have imposed the same sentence using a corrected scoresheet that did not include the victim injury points.

*Cromartie v. State*, 70 So. 3d 559, 563 (Fla. 2011)). Generally, appellate courts will not entertain arguments that have not been presented in the court below, but there is an exception "where the error complained of for the first time on appeal is fundamental error." *Id.* (first citing *Ashford v. State*, 274 So. 2d 517, 518 (Fla. 1973); and then citing *Gibson v. State*, 351 So. 2d 948, 950 (Fla. 1977)). Consideration of improper sentencing factors constitutes a due process violation that results in fundamental error. *See Geske*, 378 So. 3d at 1203.

A trial court may consider the surrounding circumstances of a primary offense. *Alhasani v. State*, 397 So. 3d 814, 817 (Fla. 2d DCA 2024) (citing *Nichols v. State*, 283 So. 3d 947, 950 (Fla. 2d DCA 2019)). But a trial court is "prohibited from considering unsubstantiated allegations of misconduct." *Id.* (citing *Geske*, 378 So. 3d at 1208). "If a trial court does so, a due process violation occurs, resulting in fundamental error." *Id.* (citing *Geske*, 378 So. 3d at 1209); *see also Berben v. State*, 268 So. 3d 235, 237 (Fla. 5th DCA 2019).

"The State bears the burden to prove from the record as a whole that the trial court did not consider impermissible sentencing factors." *Alhasani*, 397 So. 3d at 817 (citing *Geske*, 378 So. 3d at 1209). Automatic reversal is not required simply because a trial judge hears improper information during a sentencing hearing; this is because "trial judges may hear improper information from time to time during sentencing hearings, [but they] must act within the bounds of the law and neither consider nor act upon that improper information." *Id.* (quoting *Wyrich v. State*, 370 So. 3d 1000, 1004 (Fla. 2d DCA 2023)). "[A]n appellate court 'must examine the record to determine whether "it may reasonably be read to suggest" that a defendant's sentence was the result, at least in part, of the consideration of impermissible factors.' "

28

*Id.* (quoting *Mosley v. State*, 198 So. 3d 58, 60 (Fla. 2d DCA 2015)). "Where it is clear that the State directed a trial court's attention to uncharged misconduct . . . and it is likewise clear that the trial court relied on such information, this court must reverse and remand for resentencing before a different judge." *Id.* (citing *Wyrich*, 370 So. 3d at 1005). "And if the record is at all unclear whether a trial court considered improper sentencing factors, the sentence must also be reversed." *Id.*

Here, a review of the State's argument, in conjunction with the victim impact statements and the trial court's findings, reflects that the trial court disregarded any improper requests to sentence Chang as if he had committed vehicular homicide and that, instead, his sentence was based on the facts of the case. The State's reference to vehicular homicide was not a plea for the trial court to sentence Chang as if he had committed that crime. Rather, the State's argument compared the crime of leaving the scene of an accident with death and other more serious crimes such as DUI manslaughter and vehicular homicide and the potential sentences for each. The State asserted that the reason why a person convicted of leaving the scene of an accident with death faces a longer prison sentence was because of the sheer number of cases that went unsolved; the State posited that the legislative intent was to deter the commission of that crime by imposing a harsher sentence for it. The State referred to the calculated and deliberate act of leaving the scene of the accident with death and argued that it was "self-preservation." There was simply nothing in the State's argument that equated Chang's conduct to that of a person convicted of vehicular homicide, nor was there a request for the trial court to sentence him as if he had been convicted of such. *Cf. Berben*, 268 So. 3d at 237-38 (concluding that

29

trial court committed fundamental error where the sentence imposed was based on the trial court's equating the defendant's charged conduct to other uncharged crimes).

We acknowledge that some of the people who provided victim impact statements opined that Chang should have been tried for vehicular homicide and that his actions warranted it. But there is no indication in the record before us that the trial court based its sentence on those statements. The trial court noted the impact that the crime had on both the victim's and Chang's families and friends. The trial court described the accident as a "test" which Chang failed repeatedly. The court recited testimony regarding Chang's speed and purported inattentiveness and the fact that Chang did not stop. The trial court emphasized that Chang returned to the scene and watched first responders tend to the victim but that he then failed to turn himself in to the law enforcement officers who were there. The trial court also stressed that despite the fact that Chang's vehicle was severely damaged, he drove it out of town and lied about the reason for the damage so that he could get it repaired to "get[] rid of the evidence" before returning home to his family and "sa[ying] nothing." The trial court then stated, "These are all the things that I am taking into account in imposing sentence." The trial court explained why it was denying Chang's motion for downward departure and why it was imposing victim injury points, including finding that Chang caused the accident which led to the victim's death.

We reject Chang's argument that the trial court's finding that Chang caused the accident was the functional equivalent of finding him guilty of vehicular homicide. There is no indication that the trial court equated Chang's conduct to that of a person convicted of vehicular

30

homicide. Rather, it is clear that the trial court imposed the sentence based on the facts of the case. We construe the trial court's reference to the testimony about the accident itself and the trial court's subsequent conclusion that Chang caused the accident as relevant to the issue of whether victim injury points should be assessed because section 921.0021(7)(e) requires the trial court to find that Chang caused victim injury before applying victim injury points. Chang's assertion that the trial court "made a finding of recklessness" is not supported by our review of the transcript, and Chang has provided no record citation to support that assertion. We conclude that the trial court did not rely on impermissible sentencing factors resulting in fundamental error.

CONCLUSION

We hold that section 921.0021(7)(e) is not facially unconstitutional as violative of the *Apprendi* principle because there are circumstances where it could be applied in a constitutional manner. We also hold that it is not facially unconstitutional based on a violation of substantive due process. The imposition of the 120 victim injury points was supported by competent, substantial evidence, and the trial court did not consider improper sentencing factors resulting in fundamental error. Accordingly, we affirm.

Affirmed.


SILBERMAN, J., Concurs.
ATKINSON, J., Concurs in result only.

_____

Opinion subject to revision prior to official publication.

31